HARRIET S. POSNER (SBN 116097)
harriet.posner@skadden.com
KEVIN J. MINNICK (SBN 269620)
kevin.minnick@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone:  (213) 687-5000
Facsimile:   (213) 687-5600

P. ANTHONY SAMMI (pro hac vice)
Anthony.Sammi@skadden.com
JAMES Y. PAK (pro hac vice)
james.pak@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-2307
Facsimile: (917) 777-2307

Attorneys for Plaintiff
CREDIT ACCEPTANCE CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CREDIT ACCEPTANCE CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>WESTLAKE SERVICES, LLC D/B/A WESTLAKE FINANCIAL SERVICES, NOWCOM CORPORATION, HANKEY GROUP, and DON R. HANKEY,<br><br>                    Defendants. | CASE NO.: 13-cv-01523-SJO-MRNx<br><br>(1)  PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING CBM PETITION REVIEW;<br><br>(2) DECLARATION OF KEVIN J. MINNICK.<br><br>Date:        December 23, 2013<br>Time:        10:00 a.m.<br>Courtroom: 1<br>Judge:       Hon. James S. Otero |
| WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES, NOWCOM CORPORATION,<br><br>                    Counter-claimants,<br><br>          v.<br><br>CREDIT ACCEPTANCE CORPORATION,<br><br>                    Counter-defendant | |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................... 3

ARGUMENT .............................................................................................. 5

I.     Contrary to Westlake's Assertions, A Stay Does Not Automatically Result From The Defendants' Filing Of A CBM Petition ........................................................................................... 5

II.    The Four Factors, Properly Weighted, Favor Permitting This Litigation To Go Forward As Scheduled .......................................... 8

       A.    Credit Acceptance Will Be Significantly Prejudiced By A Stay, Which Would Provide Westlake An Unfair Tactical Advantage ................................................................... 8

            1.    Westlake Needlessly Delayed Seeking CBM Review For Seven Months ................................................ 8

            2.    The Timing Of Westlake's Request For A Stay Further Supports An Inference Of Tactical Delay ........... 11

            3.    The Nascent Status Of The CBM Proceeding Weighs Against A Stay ...................................... 11

            4.    The Parties Directly Compete, Weighing Heavily Against A Stay .................................................. 12

       B.    The Stage Of This Litigation Weighs Heavily Against A Stay ................................................................. 14

            1.    The Parties Have Engaged In Significant Discovery ........ 14

            2.    Invalidity And Infringement Contentions Have Been Served And Claim Construction Proceedings Are Well Underway ................................................ 15

            3.    A Scheduling Order Is In Place, And A Trial Date Is Set ................................................................ 16

       C.    Any Potential Simplification Of Issues Remains Speculative Because PTAB Has Not Instituted Any Review ..... 17

       D.    The Burden Of Litigation Factor Is Not Dispositive, And Under  The Totality Of The Circumstances, The Stay Should Be Denied ......................................................... 19

1

<u>**TABLE OF AUTHORITIES**</u>

2

**CASES**                                                              **PAGE(S)**

3   <u>Avago Technologies Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.</u>,
          No. 10–CV–02863–EJD,
4         2011 WL 3267768 (N.D. Cal. July 28, 2011) ...................................................14

5   <u>Benefit Funding Systems LLC v. Advance America, Cash Advance Centers,</u>
          <u>Inc.</u>,
6         Civil Action No. 12–801–LPS,
          2013 WL 3296230 (D. Del. June 28, 2013) ..........................................<u>passim</u>
7
    <u>Comcast Cable Communications Corp., LLC v. Finisar Corp.</u>,
8         No. C 06-04206 WHA,
          2007 WL 1052883 (N.D. Cal. Apr. 5, 2007)..........................................................6
9
    <u>Dane Technologies Inc. v. Gatekeeper Systems, Inc.</u>,
10        Civil No. 12–2730 ADM/AJB,
          2013 WL 4483355 (D. Minn., Aug. 20, 2013)...................................................8, 9
11
    <u>Imagevision.Net, Inc. v. Internet Payment Exchange, Inc.</u>
12        ("Imagevision.Net I"),
          C.A. No. 12–054–GMS–MPT,
13        2012 WL 3866677 (D. Del. Sept. 4, 2012) ...........................................12, 13, 18

14  <u>Imagevision.Net, Inc. v. Internet Payment Exchange, Inc.</u>
          ("Imagevision.Net II"),
15        C.A. No. 12–054–GMS–MPT,
          2012 WL 5599338 (D. Del. Nov. 15, 2013)...........................................................12
16
    <u>Imagevision.Net, Inc. v. Internet Payment Exchange, Inc.</u>
17        ("Imagevision.Net III"),
          C.A. No. 12–054–GMS–MPT,
18        2013 WL 663535 (D. Del. Feb. 25, 2013)........................................................15, 16

19  <u>Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.</u>,
          922 F. Supp. 2d 486 (D. Del. 2013) ...............................................................8, 19
20
    <u>Nippon Steel & Sumito Metal Corp. v. Posco</u>,
21        Civil Action No. 12–2429 (DMC),
          2013 WL 1867042 (D.N.J. May 2, 2013)........................................................15, 16
22
    <u>Proctor & Gamble Co. v. Team Technologies, Inc.</u>,
23        No. 1:12–cv–552,
          2013 WL 4830950 (S.D. Ohio Sept. 10, 2013) ..............................13, 14, 15, 16
24
    <u>Progressive Casualty Insurance Co. v. Safeco Insurance Co. of Illinois</u>,
25        Nos. 1:10CV01370, 1:11CV00082, 1:12CV01068,
          1:12CV01070.2013 WL 1662952 (N.D. Ohio Apr. 17, 2013) ...................18, 20
26
    <u>SenoRx, Inc. v. Hologic, Inc.</u>,
27        Civ. Action No. 12–173–LPS–CJB,
          2013 WL 144255 (D. Del. Jan. 11, 2013) ...........................................12, 13, 20
28

ii

Steuben Foods, Inc. v. GEA Process Engineering, Inc.,
No. 12–CV–0904S(Sr),
2013 WL 5567499 (W.D.N.Y. Oct. 8, 2013) ..........................................14, 16, 17

TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.,
Case No. 13–cv–02218–JST,
2013 WL 6021324 (N.D. Cal. Nov. 13, 2013) ..........................................passim

Tokuyama Corp. v. Vision Dynamics, LLC,
No. C 08-2781SBA,
2008 WL 4452118 (N.D. Cal. Oct. 3, 2008) ...................................................6

Tric Tools, Inc. v. TT Technologies, Inc.,
No. 12–CV–3490 YGR,
2012 WL 5289409 (N.D. Cal. Oct. 25, 2012) .............................................6, 11

United States v. Rone,
598 F.2d 564 (9th Cir. 1979) ......................................................................7

Universal Electronics, Inc. v. Universal Remote Control, Inc.,
__ F. Supp. 2d __, Case No. SACV 12–00329 AG(JPRx),
2013 WL 1876459 (C.D. Cal. May 2, 2013)..........................................passim

Viskase Corp. v. America National Can Co.,
261 F.3d 1316 (Fed. Cir. 2001) ...................................................................6

Zuress v. Donley,
606 F.3d 1249 (9th Cir. 2010) ....................................................................7

**STATUTES**

11 U.S.C. § 362......................................................................................7

35 U.S.C. § 314(b) .................................................................................5

35 U.S.C. § 324(a) .................................................................................1

28 U.S.C. § 1659....................................................................................7

America Invents Act ("AIA"), Pub. L. 112-29....................................1, 6

AIA § 18(b)(1)(B)...............................................................................6, 16

**OTHER AUTHORITIES**

42 C.F.R. § 42.300(c) ............................................................................17

37 C.F.R. § 42.207 ..................................................................................5

37 C.F.R. § 42.300(c) ..............................................................................5

157 Cong. Rec. S1363-64 ........................................................................7

## **PRELIMINARY STATEMENT**

Seven months into this litigation and with no notice to this Court or Plaintiff, Defendants submitted a petition to the Patent Trial and Appeal Board (the "PTAB") seeking post-grant review of the patent at issue in this case.   In that petition, Defendants seek to invalidate the patent's 42 claims using the new Covered Business Method ("CBM") patent review procedure enacted as part of the America Invents Act ("AIA"), Pub. L. 112-29.   Before submitting the petition and without ever revealing their intent to seek CBM review, Defendants participated in scheduling conference proceedings and progressed through seven months of deadlines under the Court's Scheduling Order (Doc. 46).

Despite the considerable time and expense expended by Plaintiff during this period, Defendants offer no explanation for their seven month delay, during which time they filed and refiled an unsuccessful motion for sanctions.  Instead, Defendants seek a stay of this litigation pending the conclusion of the CBM process despite the fact that the PTAB has not yet even decided whether to accept or reject the petition in the first instance, and need not do so until April of next year.[1]  Furthermore, in the event the PTAB accepts the petition next year, Defendants concede that the proceeding could last up to 18 months – well past the trial date set in this action. Plaintiff is not a "patent troll" but rather a direct competitor that practices the patent and is being harmed by Defendants' ongoing infringing activity.

Meanwhile, this litigation has progressed considerably.   The parties have produced hundreds of thousands of pages of document discovery, exchanged preliminary infringement and invalidity contentions, and are currently finalizing the issues to be submitted to the Court on claim construction.   The case is set for trial in August of next year.

---

[1] The standard governing the PTAB's decision whether to conduct CBM review is whether "it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable." 35 U.S.C. § 324(a).

Defendants' motion to stay (the "Motion") is governed by Section 18(b) of the AIA, which directs the Court to consider (1) the prejudice resulting from a stay, (2) the relatively advanced stage of this litigation, (3) the potential (or lack thereof) for CBM review to narrow the issues for trial in this case, and (4) whether a stay will lessen the burden of litigation on the parties.  Crucially, although Section 18(b) reflects a Congressional nudge in the direction of granting stays, Congress stopped short of mandating a stay whenever CBM review is sought.  Courts remain free to exercise their considerable discretion to control their proceedings within the guidelines of the four factors identified in Section 18(b).  Those factors weigh against a stay here.

First, Plaintiff will suffer undue prejudice from the stay.  Plaintiff should not be punished for expending considerable time and expense conducting pre-trial litigation for the seven months that Defendants took to submit their CBM petition to the PTAB.  Moreover, because the parties are direct competitors, the law teaches that a stay is especially likely to result in harm that cannot be compensated with money damages, deepening the prejudice here.

Second, the relatively advanced stage of the litigation weighs against a stay.  A trial date is set, and the parties are well on their way to completing discovery and claim construction.  A stay would frustrate that progress in favor of a CBM process still in its most incipient stages.

Third, the CBM process' potential to narrow the issues for trial remains highly speculative because the PTAB has not agreed to conduct CBM review, weighing against a stay.

Fourth, although a stay can reduce the burden of litigation, that factor cannot be dispositive and is not determinative here.  The totality of the circumstances oppose a stay because, despite the potential for reducing the burden of litigation, the proposed stay would significantly prejudice Plaintiff, provide Defendant an undue tactical advantage, and derail relatively advanced litigation, all in service of

1   speculative gains by way of someday narrowing issues for a trial that is, in any event,

2   already less than a year away.  The Court should deny the Motion.

3                    **FACTUAL AND PROCEDURAL BACKGROUND**

4           Plaintiff Credit Acceptance Corporation ("Credit Acceptance") is an indirect

5   automotive finance company dedicated to providing financing to individuals with

6   subprime credit.  Since 1972, Credit Acceptance has worked to equip auto dealers to

7   better serve consumers with poor credit through its Credit Approval Processing

8   System ("CAPS").  The core components of CAPS are protected by the duly and

9   legally issued U.S. Patent Number 6,950,807 (the '807 Patent), of which Credit

10  Acceptance is the assignee.

11          On March 4, 2013, Credit Acceptance brought suit for patent infringement

12  against Defendants Westlake Services, LLC (doing business as Westlake Financial

13  Services), Nowcom Corporation, the Hankey Group, and Don R. Hankey

14  (collectively, "Westlake").  Westlake did not move to dismiss the Complaint for

15  patent invalidity or on any other grounds.  Nor did Westlake immediately seek any

16  type of post-grant review of the '807 Patent from the PTAB.

17          Instead, on April 17, 2013, Westlake gave notice that it would seek sanctions

18  against Credit Acceptance under Rule 11 of the Federal Rules of Civil Procedure,

19  arguing that the Complaint was frivolous, not based on an adequate investigation,

20  and brought for an improper purpose as to Defendants Don R. Hankey and the

21  Hankey Group.  (Doc. 31.)  After Westlake filed the Rule 11 motion, the Court

22  struck it sua sponte because it failed to provide legally adequate notice.  (Doc. 34.)

23  In its sua sponte order, the Court noted that the standard for sanctions is difficult to

24  fulfill, and that Rule 11's limitations on pleadings are forgiving.  (Id.)  The Court

25  advised Westlake to consider these admonitions before deciding whether to refile.

26  (Id.)  Heedless, Westlake refiled the motion.  (Doc. 35.)  All the while, Westlake

27  never indicated it would seek CBM review of the '807 Patent.

28

1   On May 28, 2013, the parties participated in a scheduling conference with the
2   Court.  (Doc. 46.)  After the conference, the Court set all major dates for this
3   litigation, including the exchange of terms for construction, the exchange of
4   constructions and extrinsic evidence, the close of claim construction discovery, a
5   claim construction briefing schedule, and a <u>Markman</u> hearing to occur March 10,
6   2014.  (<u>Id.</u> at 2.)  The Court also set this case for trial to commence August 19, 2014.
7   (<u>Id.</u> at 4.)  At no point during the parties' Rule 26(f) correspondence, nor during the
8   Court's scheduling conference did Westlake object to the schedule or indicate that it
9   was preparing a petition to seek CBM review, let alone that it would ask to stay the
10  dates that resulted from the Court's scheduling process.  After the conference, in
11  which the Court again suggested the Rule 11 motion would not be granted, Westlake
12  withdrew that motion.  (Minnick Decl. Ex. 1 (May 28, 2013 Hr'g Tr. 5:6-18); Doc.
13  48.)[2]

14  Since the Scheduling Order issued, this litigation has proceeded on schedule,
15  with significant progress in terms of discovery and claim construction.  On June 28,
16  2013, Credit Acceptance served its Preliminary Infringement Contentions.  (Minnick
17  Decl. ¶ 3.)  Westlake followed with its Preliminary Invalidity Contentions on
18  September 27, 2013.  (<u>Id.</u> ¶ 4.)  On October 28, 2013, the parties exchanged terms
19  for construction, and have engaged in meet and confer discussions about those terms.
20  (<u>Id.</u> ¶ 5.)  After meeting and conferring, the parties exchanged preliminary
21  constructions and identified extrinsic evidence on November 11, 2013.  (<u>Id.</u> ¶ 6.)
22  Before this Motion is heard, the parties will have submitted their Joint Claim
23  Construction Chart and Prehearing Statement.  (Doc. 46 at 1.)  By then, Credit
24  Acceptance will have deposed Westlake's claim construction expert as well.
25  (Minnick Decl. Ex. 2.)

26
27  ───────────────────────
    [2] All citations to the "Minnick Decl." refer to the concurrently filed Declaration of
28  Kevin J. Minnick.

To date, Credit Acceptance has made three document productions totaling 192,569 pages. (Minnick Decl. ¶ 2.) Westlake has produced 67,116 pages spanning three productions. (Id.)[3] Claim construction discovery will close December 30, 2013. (Doc. 46 at 1.)

Despite this significant progress toward trial, Westlake petitioned the PTAB for CBM review of the '807 Patent on October 11, 2013. (Doc. 58-2.)[4] Westlake has offered no explanation for the seven month gap between the commencement of this action and its petition for CBM review. Credit Acceptance's response to the petition is due January 24, 2013. See 37 C.F.R. § 42.207. After that response, the PTAB has another three months to decide whether to institute CBM review, here, until April 24, 2014. 35 U.S.C. § 314(b). If CBM review is granted, the PTAB must render its decision concerning post-grant review within a year of instituting the petition, although an extension of up to six months is permitted for good cause. 37 C.F.R. § 42.300(c). Assuming the PTAB grants review and does so around the deadline, the PTAB would have until April 24, 2015 to render its ultimate decision, a full eight months after the trial date set in this action.

Westlake filed the instant Motion November 15, 2013. For the reasons below, the Court should deny the Motion.

## **ARGUMENT**

### I.   **Contrary to Westlake's Assertions, A Stay Does Not Automatically Result From The Defendants' Filing Of A CBM Petition**

"Courts have inherent power to manage their dockets" in patent cases. Universal Elecs., Inc. v. Universal Remote Control, Inc., __ F. Supp. 2d __, 2013 WL 1876459, at *2 (C.D. Cal. May 2, 2013) (internal quotation marks and citation

---

[3] It is not clear why Westlake asserts that there have been "only two rounds of document production" (Mot. at 13), when, in fact, there have been no fewer than six document productions.

[4] Westlake corrected procedural deficiencies with the application on October 25, 2013. (Doc. 58-3.)

1  omitted).  In exercising this discretion over a motion to stay pending CBM review,

2  district courts are instructed by Section 18(b) of the AIA to weigh four factors.  The

3  Court must consider "(A) whether a stay, or the denial thereof, will simplify the

4  issues in question and streamline the trial; (B) whether discovery is complete and

5  whether a trial date has been set; (C) whether a stay, or the denial thereof, would

6  unduly prejudice the nonmoving party or present a clear tactical advantage for the

7  moving party; and (D) whether a stay, or the denial thereof, will reduce the burden of

8  litigation on the parties and on the court."  AIA § 18(b), Pub. L. 112-29 at 331.

9       "While Section 18(b) requires courts to consider the four factors, Section

10  18(b) does not require courts to stay litigation."  Benefit Funding Sys. LLC v.

11  Advance Am., Cash Advance Ctrs., Inc., 2013 WL 3296230, at *2 n.3 (D. Del. June

12  28, 2013) (emphasis added).  It is well established that "'[t]here is no per se rule that

13  patent cases should be stayed pending reexaminations, because such a rule would

14  invite parties to unilaterally derail litigation.'"  TPK Touch Solutions, Inc. v. Wintek

15  Electro-Optics Corp., 2013 WL 6021324, at *2 (N.D. Cal. Nov. 13, 2013) (quoting

16  Tokuyama Corp. v. Vision Dynamics, LLC, 2008 WL 4452118, at *2 (N.D. Cal.

17  Oct. 3, 2008)); see also Comcast Cable Commc'ns Corp., LLC v. Finisar Corp., 2007

18  WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007) ("If litigation were stayed every time a

19  claim in suit undergoes reexamination, federal infringement actions would be dogged

20  by fits and starts.  Federal court calendars should not be hijacked in this manner.").

21       Accordingly, "[a] court is under no obligation to delay its own proceedings on

22  account of a PTO patent reexamination, regardless of their relevancy to infringement

23  claims which the court must analyze."  Tric Tools, Inc. v. TT Techs., Inc., 2012 WL

24  5289409, at *1 (N.D. Cal. Oct. 25, 2012) (citing Viskase Corp. v. Am. Nat'l Can

25  Co., 261 F.3d 1316, 1328 (Fed. Cir. 2001)) "While the case law states several

26  general considerations that are helpful in determining whether to order a stay,

27  ultimately the Court must decide stay requests on a case-by-case basis."  TPK Touch

28  Solutions, 2013 WL 6021324, at *1.

1    In light of these well-settled principles governing a district court's discretion
2    over its own docket, the Court should reject Westlake's repeated suggestions that the
3    AIA's four factors all but require a stay in nearly every case in which a party seeks
4    CBM review.  (Defendants' Motion to Stay Pending CBM Petition Review, Doc. 58
5    (hereinafter, "Mot.") at 1-2, 7, 16-17.)  Westlake bases these suggestions on excerpts
6    from the AIA's legislative history, quoting Senator Schumer's view that Section
7    18(b) puts a "'heavy thumb on the scale in favor of a stay being granted.'"  (Mot. at
8    2 (quoting 157 Cong. Rec. S1363-64 (daily ed. Mar. 8, 2011)).)  Of course,
9    legislative history is not law, and where "the plain meaning of the statute is
10   unambiguous, that meaning is controlling and we need not examine legislative
11   history as an aid to interpretation unless the legislative history clearly indicates that
12   Congress meant something other than what it said."  Zuress v. Donley, 606 F.3d
13   1249, 1252-563 (9th Cir. 2010) (internal quotation marks omitted).  Westlake has not
14   suggested that the AIA or any part of Section 18(b)'s four-part test is ambiguous
15   such that resort to legislative history would benefit this Court's application of
16   familiar factors governing stay requests.  See United States v. Rone, 598 F.2d 564,
17   569 (9th Cir. 1979) ("When no ambiguity is apparent on the face of a statute, an
18   examination of legislative history is inappropriate. The proper function of legislative
19   history is to solve, and not create, an ambiguity.").

20   Moreover, had Congress intended district courts to stay patent litigation
21   pending CBM review as a matter of course, it would have so provided in the statute
22   itself, just as Congress has provided for automatic stays in other statutory systems.
23   See, e.g., 28 U.S.C. § 1659 (requiring a stay of civil litigation pending certain
24   proceedings before the International Trade Commission); 11 U.S.C. § 362
25   (mandating automatic stays of civil litigation pending bankruptcy proceedings).
26   Thus, the four-factor test controls, and the Court should reject any assertion, based
27   on legislative history or otherwise, that the AIA mandates a stay.  See Benefit

28

Funding, 2013 WL 3296230, at *2 (denying a stay under Section 18(b) of the AIA after straightforward application of the four-part test).

## II.   The Four Factors, Properly Weighted, Favor Permitting This Litigation To Go Forward As Scheduled

### A.   Credit Acceptance Will Be Significantly Prejudiced By A Stay, Which Would Provide Westlake An Unfair Tactical Advantage

The Court must "consider[] 'whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party.'" Universal Elecs., 2013 WL 1876459, at *5 (citation omitted). Courts have "adopted a set of four sub-factors for evaluating prejudice . . . : '(1) the timing of the reexamination request; (2) the timing of the request for stay; (3) the status of reexamination proceedings; and (4) the relationship of the parties.'" TPK Touch Solutions, 2013 WL 6021324, at *4 (citation omitted).[5]   Each of these factors demonstrates that Credit Acceptance will suffer prejudice from a stay of this litigation and that Westlake is seeking a tactical advantage at Credit Acceptance's expense.

### 1.   Westlake Needlessly Delayed Seeking CBM Review For Seven Months

Because of the delay inherent in PTAB review proceedings, courts "expect[] defendants to evaluate whether to file, and then to file, [post-grant review] petitions as soon as possible after learning that a patent may be asserted against them." TPK Touch Solutions, 2013 WL 6021324, at *4 (emphasis added). Thus, "[a] court may deny a request for a stay where the movant has unjustifiably delayed seeking reexamination[.]" Dane Techs. Inc. v. Gatekeeper Sys., Inc., 2013 WL 4483355, at *2 (D. Minn., Aug. 20, 2013) (denying stay where defendant delayed filing for post-grant review until seven months into the litigation).

---

[5] Westlake's own authority, Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P., 922 F. Supp. 2d 486, 494 (D. Del. 2013), on which it heavily relies, confirms that these four sub-factors apply perforce under Section 18(b) of the AIA.  Yet Westlake's Motion is silent as to these sub-factors.

CREDIT ACCEPTANCE'S OPP'N TO MOTION TO STAY

1   Here, as in <u>Dane Technologies</u>, Westlake delayed filing its petition for CBM
2   review for <u>seven months</u>.  (Mot. at 13.)  Westlake offers no justification to excuse
3   the seven months delay beyond the bare conclusion that the "mere 7 months" is
4   "negligible" and no worse than some other "defendants who display far less
5   diligence."  (<u>Id.</u> at 13-14.)  Rather, Westlake accuses Credit Acceptance of waiting
6   seven years to file this litigation.  That assertion is unfounded, and indeed Westlake
7   cites nothing to support it.  Presumably, Westlake means to argue that some of its
8   products – or some version of them – have been on the market since the '807 Patent
9   issued in 2005.   This <u>ipse</u> <u>dixit</u> argument takes no account of when Credit
10  Acceptance may have learned about Westlake's products nor provides any context
11  concerning the differences in Westlake's infringing products as they were developed
12  over time.  (For instance, a non-infringing product that existed seven years ago may
13  change over time to include new features that do infringe.)  The Court should reject
14  Westlake's conclusory attempt to shift blame for Westlake's undue delay to Credit
15  Acceptance.  In any event, the seven month gap between the beginning of this
16  litigation and Westlake's CBM request alone supports an inference of tactical delay.
17  <u>Dane Techs.</u>, 2013 WL 4483355, at *2 (denying stay where "Gatekeeper waited
18  approximately seven months into the litigation . . . before seeking inter partes
19  review . . . ."); <u>see also</u> <u>Benefit Funding</u>, 2013 WL 3296230, at *2 (denying stay
20  under Section 18(b) in part because defendant waited 10 months to file for CBM
21  review).

22   The inference of tactical delay is stronger here than the elapsed time alone
23  suggests.  After Credit Acceptance served Defendants with the Complaint, they
24  opted not to move to dismiss on invalidity grounds nor immediately seek CBM
25  review.  Instead, they precipitously moved this Court to issue Rule 11 sanctions
26  against Credit Acceptance, claiming that Credit Acceptance's claims for relief
27  against Defendants Don R. Hankey and The Hankey Group were somehow frivolous,
28  without a basis in law, without adequate investigation, and for an improper purpose.

9

1   (Doc. 31.)  However, the Rule 11 motion failed to afford Credit Acceptance a legally
2   adequate notice period under Local Rule 6-1, and the Court struck it <u>sua</u> <u>sponte</u>.
3   (Doc. 34.)   In so doing, the Court noted that Rule 11 sanctions "are an extreme
4   remedy and violations of Rule 11 are difficult to establish. In the absence of a
5   compelling demonstration by Defendants that Plaintiff has truly taken some action
6   without any possible meritorious basis for that action, the Court urges that
7   Defendants consider the merits of this motion before refiling it in accordance with
8   Local Rule 6-1." (<u>Id.</u>)

9        Westlake refiled the request for sanctions on May 22, 2013 (Doc. 35), and the
10  Court addressed the pending motion during the May 28, 2013 scheduling conference.
11  As the Court again explained, Rule 11 provides plaintiffs a liberal pleading standard
12  such that sanctions cannot issue where an allegation has evidentiary support or is
13  likely to have evidentiary support.  (Minnick Decl. Ex. 1 at 5:19-23.)  The Court
14  further noted that the claims against Don R. Hankey and The Hankey Group could in
15  good faith be supported by the existence of Westlake's various websites, which
16  identify Mr. Hankey as the "chairman" of The Hankey Group.  (<u>Id.</u> at 5:24-6:12.)
17  Only after this further admonition from the Court did Westlake withdraw the Rule 11
18  motion on June 11, 2013, approximately two weeks after the hearing.  (Doc. 48.)

19       In all, nearly two months elapsed between Westlake's initial notice to Credit
20  Acceptance on April 17, 2013 that it would move for sanctions (Doc. 35-3 ¶ 4), and
21  Westlake's withdrawal of the motion on June 11, 2013 (Doc. 48).  Had that time
22  been used instead on Westlake's petition for CBM review, the PTAB proceedings
23  would be that much farther along, and the parties may not have expended so much
24  effort in discovery and claim construction as they have to date.  Westlake's tactical
25  delay weighs strongly against a stay.

26

27

28

2.    The Timing Of Westlake's Request For A Stay Further Supports An Inference Of Tactical Delay

Although Westlake sought a stay in this Court shortly after seeking CBM review, the timing of Westlake's request reveals two related litigation tactics that could give Westlake an unfair advantage.  First, Westlake participated in this Court's scheduling conference and submitted to the May 28, 2013 Scheduling Order without revealing to Credit Acceptance or the Court that it would move for CBM review and a stay of the case.  Westlake remained silent and received significant document discovery from Credit Acceptance.  Indeed, until October 11, 2013, four-and-a-half months after the scheduling conference, Credit Acceptance expended its time and resources litigating this case without any indication from Westlake that it would hamper those efforts, seek to derail future Scheduling Order deadlines, and attempt to deprive Credit Acceptance of its chosen forum.  One of the first courts to construe Section 18(b) of the AIA cited that very circumstance – failure to object to the scheduling order – in denying a stay.  Benefit Funding, 2013 WL 3296230 at *1 n.1.

Second, having delayed the CBM petition for seven months, Westlake rushed in to seek a stay even before the PTAB has decided whether to go forward with review proceedings.  For purposes of the present Motion, this timing renders completely speculative whether the post-grant review (if any occurs) will narrow the issues for trial, as elaborated below.  This too can weigh against a stay.  Tric Tools, 2012 WL 5289409, at *3 ("Again, only requests for reexamination have been made.  The PTO has not granted any of those requests.  Seeking a stay at this juncture is, at best, premature, and, at worst, an indicator of a tactical delay strategy.").

3.    The Nascent Status Of The CBM Proceeding Weighs Against A Stay

Westlake's CBM petition is in its infancy.  Credit Acceptance has not yet filed its submission opposing review, and will not do so until January 24, 2014.  It could be another three months before the PTAB decides whether to accept the petition.  Indeed, trial of this action could commence before the PTAB produces any

11

information useful to this litigation.  See Imagevision.net, Inc. v. Internet Payment Exch., Inc. ("Imagevision I"), 2012 WL 3866677, at *4 (D. Del. Sept. 4, 2012) ("A stay would prejudice [plaintiff] particularly since this litigation would likely be completed far in advance of a decision on the last appeal in the reexamination proceeding.") (prejudice ruling affirmed by Imagevision.net, Inc. v. Internet Payment Exch., Inc. ("Imagevision II"), 2012 WL 5599338, at *1 (D. Del Nov. 15, 2012)). Accordingly, Westlake's "request for [post-grant review] is at the earliest stage. This sub-factor weighs against a stay."  TPK Touch Solutions, 2013 WL 6021324, at *5.

4.     The Parties Directly Compete, Weighing Heavily Against A Stay

"Because [Credit Acceptance] and [Westlake] are direct competitors, the risk of prejudice is higher to the non-moving party than it would be otherwise."  TPK Touch Solutions, 2013 WL 6021324, at *5.  "Courts have found that infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages.  Staying a case while such harm is ongoing usually prejudices the patentee that seeks timely enforcement of its right to exclude." Universal Elecs., 2013 WL 1876459, at *5 (internal quotation marks and citations omitted).  "Courts have recognized that when the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential loss of market share and an erosion of goodwill."  SenoRx, Inc. v. Hologic, Inc., 2013 WL 144255, at *7 (D. Del. Jan. 11, 2013).[6]

---

[6] The prejudice is only heightened in the context of financial computer systems, given the speed with which technologies change.  See Imagevision I, 2012 WL 3866677, at *3 ("'Given the fast pace of technology development, particularly in the computer software and payment collection space, loss of the early years of a patent term may effectively render the '925 patent worthless as technology moves forward.'") (citation omitted).

1    Thus, "[c]ourts routinely deny requests for stay during the pendency of PTO

2  proceedings where the parties are direct competitors," <u>Proctor & Gamble Co. v.</u>

3  <u>Team Techs., Inc.</u>, 2013 WL 4830950, at *2 (S.D. Ohio Sept. 10, 2013) (internal

4  quotation marks omitted), and have repeatedly held that "[t]he element of direct

5  competition <u>strongly</u> favors denying [a] motion to stay,"  <u>Imagevision I</u>, 2012 WL

6  3866677, at *4 (emphasis added).

7    Westlake does not deny that it directly competes with Credit Acceptance.

8  Instead, Westlake points to CAC's decision not to seek an immediate injunction in

9  this litigation.  Westlake argues that this decision shows the delay caused by CBM

10  review is compensable by money damages, alleviating the prejudice.  In support, the

11  Motion cites four cases suggesting that a lack of preliminary injunction proceedings

12  in the district court supports the inference that the nonmoving party will not be

13  prejudiced.  (Mot. at 15.)  Westlake fails to acknowledge, however, that very recent

14  authority – even authority cited by Westlake – clarifies that the decision not to move

15  for an injunction tells the Court little about prejudice.

16    For instance, in <u>SenoRx</u>, the District of Delaware acknowledged the line of

17  previous authority concerning injunctions, but explained that "in some cases, the

18  failure to seek a preliminary injunction could well be related to other factors (such as

19  the high burden one must face to obtain a preliminary injunction and the difficulty in

20  doing so without first having access to substantial discovery) and thus might not shed

21  much light on the amount of prejudice the nonmoving party will face from a stay."

22  2013 WL 144255, at *8 (cited in Westlake's Motion at page 11).  The decision not to

23  seek an injunction particularly lacks probative value where, as here, competition

24  between the parties is unquestioned.  <u>Id.</u> ("Here, with the fact of direct competition

25  not in any serious dispute, the Court does not find SenoRx's litigation posture,

26  including its decision not to file for a preliminary injunction, to be particularly

27  telling.").

28

1  Similarly, a Court in this District recently published its ruling that, although

2  the authority may be split around the country, "on a 'motion to stay, the Court will

3  not hold against [the patentee] its decision to spare the parties more litigation [in the

4  form of a motion for preliminary injunction].'" Universal Elecs., 2013 WL 1876459,

5  at *5 (quoting Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc., 2011

6  WL 3267768, at *6 (N.D. Cal. July 28, 2011) (alterations in original).   Credit

7  Acceptance's decision not to seek a preliminary injunction does not undermine the

8  prejudice caused by the relationship between the directly competing parties, which

9  weighs strongly against a stay.  Thus, all four sub-factors regarding prejudice oppose

10  staying the litigation.

11  **B.    The Stage Of This Litigation Weighs Heavily Against A Stay**

12  Courts must also consider "the stage of the proceedings, including 'whether

13  discovery is complete and whether a trial date has been set.'" Universal Elecs., 2013

14  WL 1876459, at *3 (citation omitted).  "Courts have . . . denied a request for a stay

15  when, as in this case, the litigation has progressed significantly toward trial,

16  particularly when claim construction efforts are well underway." Procter & Gamble,

17  2013 WL 4830950, at *4 (citing Universal Elecs., 2013 WL 1876459, at *3).   In

18  particular, this factor weighs against a stay where the post-grant review proceedings

19  are unlikely to conclude before the district court trial would commence. Steuben

20  Foods, Inc. v. GEA Process Eng'g, Inc., 2013 WL 5567499, at *5 (W.D.N.Y. Oct. 8,

21  2013) (noting that where post-grant review would prolong the litigation, a stay may

22  be denied, especially where "it seems unlikely . . . that [review proceedings] would

23  be final before this action would be ready for trial.").  The stage of this litigation in

24  terms of (1) discovery already accomplished; (2) claim construction efforts; and (3) a

25  firm trial date all weigh strongly against a stay.

26  1.    The Parties Have Engaged In Significant Discovery

27  Credit Acceptance has made three document productions spanning from June

28  2013 through late November 2013.  In response to Westlake's 78 document requests,

14

Credit Acceptance has harvested, processed, reviewed, and produced 192,569 pages of responsive documents, many of which are confidential or highly confidential. (Minnick Decl. ¶ 2.)   For its part, Westlake has made three productions, totaling 67,116 pages.   (Id.)   Before the Court hears this Motion, Westlake's claim construction expert will have been deposed.  (Minnick Decl. Ex. 2.)  And, Westlake has indicated that it will seek to depose the inventor and the patent prosecution attorney of the '807 Patent before the end of 2013.  (Id.)[7]  This progress in discovery weighs heavily against staying these proceedings.  Imagevision.Net, Inc. v. Internet Payment Exch., Inc. ("Imagevision III"), 2013 WL 663535, at *3 (D. Del. Feb. 25, 2013) (denying stay where "plaintiff has produced almost 38,000 pages of confidential documents in response to defendant's first set of document requests"); Nippon Steel & Sumito Metal Corp. v. Posco, 2013 WL 1867042, at *9 (D.N.J. May 2, 2013) (denying stay where "hundreds of thousands of documents have been exchanged"); Proctor & Gamble, 2013 WL 4830950, at *4 (denying stay where "Plaintiff has produced nearly 100,000 pages of documents and is moving toward completion of its own document production").

> 2.   Invalidity And Infringement Contentions Have Been Served And Claim Construction Proceedings Are Well Underway

Credit Acceptance has served its Preliminary Infringement Contentions, and Westlake has served its Preliminary Invalidity Contentions.  (Minnick Decl. ¶¶ 3-4.) The parties have exchanged terms for construction and met and conferred about those terms.   (Id. ¶ 5.)   After meeting and conferring, the parties exchanged preliminary constructions and identified extrinsic evidence.  (Id. ¶ 6.)  Before the Court hears this Motion, the parties will have submitted their Joint Claim Construction Chart and prehearing Statement.  (Doc. 46 at 1.)  By then, Credit

---

[7] Accordingly, the Court should disregard Westlake's now-outdated assertion in the Motion that the parties have "yet to exchange any expert discovery, nor have they noticed/scheduled any depositions."  (Mot. at 13.)

1   Acceptance will have deposed Westlake's claim construction expert as well.

2   (Minnick Decl. Ex. 2.)   Looking ahead, while the PTAB has Westlake's CBM

3   petition under submission, the parties are scheduled to complete claim construction

4   briefing for a <u>Markman</u> hearing scheduled March 10, 2014.  Although the <u>Markman</u>

5   hearing is still in the future, the significant progress made in claim construction

6   weighs strongly against a stay.  <u>See</u> <u>Proctor & Gamble</u>, 2013 WL 4830950, at *4

7   (denying stay where "the parties have invested significant resources in resolving

8   claim construction issues, including exchanging disputed claim terms, identifying

9   evidence in support of their constructions, and conferring to try to resolve disputes.

10  Defendants have retained a proposed expert . . . . Opening claim construction briefs

11  are due in six weeks, and by the time the PTAB decides whether to move forward

12  with [post-grant review], the claim construction issues will be fully briefed and

13  argued . . ."); <u>see also</u> <u>Nippon Steel</u>, 2013 WL 1867042, at *9 (denying stay where,

14  after significant discovery efforts, "validity and invalidity contentions have been

15  served"); <u>Imagevision III</u>, 2013 WL 663535, at *3 (denying stay where "the

16  <u>Markman</u> process and letter briefs on case dispositive motions loom in the near

17  future"); <u>Steuben Foods</u>, 2013 WL 5567499, at *5 (denying stay where "discovery

18  has been exchanged, including Steuben's disclosure of claims and preliminary

19  infringement contentions").

20          3.    <u>A Scheduling Order Is In Place, And A Trial Date Is Set</u>

21          After Westlake answered the complaint and asserted counterclaims, the Court

22  held a Scheduling Conference on May 28, 2013.  At the conference, the Court

23  scheduled a trial to commence August 19, 2014.  Although Westlake's petition to the

24  PTAB was apparently already underway, Westlake did not object to entry of the

25  Court's Scheduling Order nor attempt to move any date within it on the basis of the

26  contemplated CBM petition.  The existence of a firm scheduling order in which the

27  moving party participated and a trial date also weigh against a stay.  <u>See</u> AIA §

28  18(b)(1)(B) (directing courts to consider whether a trial date has been set); <u>Universal</u>

16

1  Elecs., 2013 WL 1876459, at *3; Benefit Funding, 2013 WL 3296230, at *1 n.1
2  (denying stay under Section 18(b) of the AIA, noting that the moving party "did not
3  object to the entry of the schedule, nor to any of the dates within it").

4        Moreover, it is likely that a trial of this case will commence in this Court even
5  before the PTAB's CBM proceedings, if any occur, produce any useful information
6  for this litigation.  Westlake concedes that PTAB's deadline for resolving the CBM
7  review is not until approximately spring of 2015.  (Mot. at 4.)  Notably, applicable
8  regulations permit an extension of this deadline by another six months, 42 C.F.R. §
9  42.300(c), which may well happen here insofar as Westlake has challenged all 42
10 claims in the '807 Patent.  (Doc. 58-2.)  This conservative timeline does not account
11 for any appeals from the PTAB's decisions.  As a result, the August 19, 2014 trial
12 date in this litigation is almost sure to commence before the PTAB is done reviewing
13 the CBM, assuming the PTAB decides to review the '807 Patent.  This further
14 weighs against a stay.  See Steuben Foods, 2013 WL 5567499, at *5 ("Even
15 assuming that . . . [defendants] requests are granted by the PTO, it seems unlikely,
16 given the statistics as to the average duration of such proceedings, that they would be
17 final before this action would be ready for trial.").

18       In sum, significant discovery has occurred, claim construction is well
19 underway, and a firm trial date is set.  The parties have expended much effort to
20 move this case toward resolution, and the stage of this litigation therefore weighs
21 heavily against a stay.

22       **C.    Any Potential Simplification Of Issues Remains Speculative
23             Because PTAB Has Not Instituted Any Review**

24        "[I]n most cases, the filing of a [post-grant review] request by itself does not
25 simplify the issues in question and trial of the case."  TPK Touch Solutions, 2013
26 WL 6021324, at *4 (emphasis in original).  Where, as here, the request for review of
27 the patent in suit has not yet been granted, "[t]he undecided status of the petition[]
28 clouds the simplification inquiry."  Universal Elecs., 2013 WL 1876459, at *4.

1    It is undisputed that the PTAB has not yet decided whether to reject or grant
2    Westlake's petition for CBM review, and will not likely do so for several months.
3    (Mot. at 4.)   Indeed, Credit Acceptance's preliminary response is not due until
4    January 24, 2014, and the PTAB may take another three months to decide whether it
5    is more likely than not that at least one claim in the '807 Patent is unpatentable.
6    Although the AIA permits a defendant to <u>ask for</u> a stay before the PTAB has granted
7    or denied a CBM request, the speculative nature of the petition's eventual outcome
8    should prevent the simplification of issues factor from tipping the scales.   <u>TPK</u>
9    <u>Touch Solutions</u>, 2013 WL 6021324, at *4 n.1 ("This Court believes the balance
10   does not shift in that direction until the PTO has granted the application.").   Put
11   simply, "[w]hile the [PTAB] proceeding <u>might</u> simplify a case once [review] has
12   been granted" – if indeed it ever is granted – "at this point <u>it is too early to draw that</u>
13   <u>conclusion</u>."   <u>Id.</u> at *4 (emphasis added).   <u>See also</u> <u>Imagevision I</u>, 2012 WL
14   3866677, at *3 ("Plaintiff is correct that defendant's 'vague assertion of
15   "simplification of issues" can be argued in every case, yet courts do not uniformly
16   grant stays as a matter of course when a reexamination request is filed . . . .'")
17   (citations omitted); <u>Progressive Cas. Ins. Co. v. Safeco Ins. Co. of Ill.</u>, 2013 WL
18   1662952, at *1 (N.D. Ohio Apr. 17, 2013) (granting stay under Section 18(b) only
19   <u>after</u> the PTAB instituted review, and noting that a prior motions to stay, filed before
20   PTAB instituted review, were denied).

21   Moreover, even assuming PTAB grants the petition, the CBM review may not
22   resolve this litigation, and could leave significant issues for this Court to decide.
23   <u>Benefit Funding</u>, 2013 WL 3296230 at *2 ("<u>if</u> the PTAB decides to undertake CBM
24   Review, a stay <u>would</u> simplify the issues for trial, but – unless all asserted claims are
25   invalidated – after that review is completed there will remain numerous issues to be
26   litigated in Court (e.g., other invalidity defenses, equitable defenses, infringement,
27   remedies)").

28

### D. The Burden Of Litigation Factor Is Not Dispositive, And Under The Totality Of The Circumstances, The Stay Should Be Denied

To be sure, the burden of litigation factor will typically favor a stay; by definition, staying litigation reduces its burden. Nevertheless, where other factors weigh strongly against a stay, the burden-of-litigation factor is not dispositive because the AIA did not establish a per se rule requiring district courts to stay civil litigation pending CBM review. See, supra, Section I. In all cases, "'the totality of the circumstances governs.'" Universal Elecs., 2013 WL 1876459, at *2 (citation omitted).

Indeed, at least one court has denied a stay under Section 18(b) where the PTAB had not yet decided to undertake CBM review and the stage-of-litigation and prejudice factors weighed against a stay. Benefit Funding, 2013 WL 3296230, at *2. The same is true here: the PTAB has not made its initial decision; the parties have engaged in significant discovery; claim construction is underway; the Scheduling Order in place sets a firm trial date; Westlake has unreasonably delayed seeking CBM review without explanation; and the parties are direct competitors, which demonstrates that Credit Acceptance will be prejudiced in ways that are difficult if not impossible to compensate, to say nothing of the undue prejudice caused by denying Credit Acceptance its chosen forum. As in Benefit Funding, this mix of factors should lead the Court to deny a stay. 2013 WL 3296230, at *2.

Westlake's cases cited under the burden of litigation factor do not require a different result. In Market-Alerts, the court ruled that the nonmoving party's prejudice was mitigated by the fact that it did not compete with the moving party directly. 922 F. Supp. 2d at 495-96. There, the plaintiff's responsive brief indicated "that, at this point, patent infringement litigation represents its primary business," undermining any suggestion of competition with the defendant's actual products. Id. Credit Acceptance, by contrast, is a leader in the field of sub-prime automotive finance in direct and substantial competition with Westlake.

19

1    Westlake also relies heavily on <u>Progressive Casualty Insurance Co. v. Safeco</u>

2  <u>Insurance Co.</u>, but that case granted a stay <u>only after</u> the PTAB instituted a CBM

3  review.   2013 WL 1662952, at *1.   Before the PTAB instituted the review, all

4  requests for a stay were <u>denied</u>.   <u>Id.</u> at *6.   Moreover, whereas in <u>Progressive</u> the

5  "PTAB [wa]s likely to decide the issues before it well in advance of the Court to

6  rendering its decisions," <u>id.</u> at *7, here, as explained above, the trial in this action

7  may well commence before the PTAB finishes its work.

8                                    *        *        *

9    The totality of the circumstances opposes a stay.   The stage-of-litigation and

10  prejudice factors weigh heavily against staying the case.   The narrowing-of-the-

11  issues factor is too speculative in the current posture to support a stay, and the

12  burden of litigation factor cannot by itself control the outcome here.   The Court

13  should deny the Motion.   <u>See</u> <u>Benefit Fund</u>, 2013 WL 3296230, at *2 (denying stay

14  under the same mix of factors present here); <u>SenorX</u>, 2013 WL 144255, at *9

15  (denying stay where only one factor weighed against staying the case); <u>Universal</u>

16  <u>Elecs.</u>, 2013 WL 1876459, at *7 (denying stay where two factors plus the totality of

17  the circumstances weighed against a stay).

18

19  DATED: December 2, 2013

20                                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

21

22                            By: _____ */s/ Harriet S. Posner*_____
                                          HARRIET S. POSNER
23                                        Attorneys for Plaintiff
                                  CREDIT ACCEPTANCE CORPORATION

24

25

26

27

28

CREDIT ACCEPTANCE'S OPP'N TO MOTION TO STAY

730684-LACSR02A - MSW