JOHN D. VAN LOBEN SELS (SBN: 201354)
jvanlobensels@fishiplaw.com
Fish and Tsang LLP
333 Twin Dolphin Dr., Suite 220
Redwood City, CA 94065
Telephone:   (650) 517-9800
Facsimile:    (650) 517-9898

Attorney for Defendants and Counter-Claimants
WESTLAKE SERVICES, LLC D/B/A
WESTLAKE FINANCIAL SERVICES;
NOWCOM CORPORATION; HANKEY
GROUP; AND DON R. HANKEY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CREDIT ACCEPTANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>WESTLAKE SERVICES, LLC D/B/A WESTLAKE FINANCIAL SERVICES, ET AL.,<br><br>Defendants. | CASE NO.: 13-CV-01523-SJO-MRWx<br><br>Honorable S. James Otero<br><br>DEFENDANTS' NOTICE OF MOTION AND MOTION FOR RECOVERY OF ATTORNEYS' FEES, COSTS AND EXPENSES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Hearing: October 26, 2015<br>Time: 10 a.m.<br>Courtroom: 1 |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 26, 2015, Defendants and Counterclaimants Westlake Services, LLC d/b/a Westlake Financial Services, Nowcom Corporation, Hankey Group, and Don R. Hankey (collectively, "Defendants") will and hereby do move this Court, located at 312 North Spring Street, Los Angeles, CA 90012, for an order awarding attorneys' fees, costs, and expenses incurred by Defendants in connection with claims for patent infringement asserted against them by Plaintiff Credit Acceptance Corporation. This Motion is made pursuant to Federal Rule of Civil Procedure 54(d), Central District of California Local Civil Rules 54-1 *et seq*., 35 U.S.C. §285, and 28 U.S.C. §1920.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of John van Loben Sels, the pleadings and papers on file herein, all other matters of which the Court may take judicial notice of.

**L.R. 7.3 Notice of Application**

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on August 27, 2015. Declaration of John van Loben Sels ("JvLS Decl.") at ¶30. Plaintiff eventually indicated that it opposes the relief sought by this motion.  JvLS Decl. at ¶31.


DATED:  September 8, 2015                   By:   */s/ John D. van Loben Sels*

                                            JOHN D. VAN LOBEN SELS


                                            Attorneys for Defendants
                                            WESTLAKE SERVICES, LLC D/B/A
                                            WESTLAKE FINANCIAL SERVICES;
                                            NOWCOM CORPORATION; HANKEY
                                            GROUP; AND DON R. HANKEY

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR RECOVERY OF
ATTORNEYS' FEES, COSTS AND EXPENSES

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   PROCEDURAL TIMELINE.................................................................2

      A.    District Court Litigation ..............................................................2

      B.    Covered Business Method Proceeding.......................................3

III.  ARGUMENT ........................................................................................4

      A.    This Is An Exceptional Case Under The Patent Act............................4

            1.    CAC Failed To Conduct A Reasonable Pre-Suit Investigation..5

            2.    CAC Maintained Its Accusations Against Westlake Even After

                  *Alice*...........................................................................11

            3.    CAC's Unreasonable Litigation Conduct .................................14

      B.    The Award Of Attorneys' Fees Is Justified And The Fees Are

            Reasonable...........................................................................19

            1.    Calculation of Defendants' Reasonable Attorneys' Fees .........19

            2.    Defendants' Attorneys' Hourly Billing Rates Are Reasonable 20

            3.    Defendants' Amount Of Expended Time To Litigate In District

                  Court And The CBM Proceedings Are Reasonable .................21

            4.    Defendants Should Be Awarded Attorneys' Fees Related to All

                  Work to Defeat CAC and Invalidate the Asserted Patent.........23

IV.   CONCLUSION...........................................................................25

# TABLE OF AUTHORITIES

## CASES

*Active Network, Inc.*

   (Fed. Cir. June 23, 2015) ............................................................12

*Alice* and *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Assn'n,*

   776 F. 3d 1343 (Fed. Cir. 2014) .......................................14, 15, 16

*Alice Corp. Pty. Ltd v. CLS Bank Int'l,*

   134 S. Ct. 2347 (2014).....................................3, 4, 11, 12, 13, 15, 16, 24

*Antonious v. Spalding & Evenflo Companies, Inc.,*

   275 F.3d 1066 (Fed. Cir. 2002) .......................................................5

*Armament Sys. & Procedures v. IQ Hong Kong,*

   546 F. Supp. 2d 646 (E.D. Wis. 2008).........................................21

*Bank of Am., N.A v. Intellectual Ventures I LLC,*

   Case No. CBM2014-00028, Final Written Decision, PN 52 (P.T.A.B. May 18, 2015) 12

*Beckman Instruments, Inc. v. LKB Produkter AB,*

   892 F. 2d 1547 (Fed. Cir. 1989). ..................................................19

*Blum v. Stenson,*

   465 U.S. 886 (1984)........................................................................25

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.,*

   393 F.3d 1378 (Fed. Cir. 2005) .......................................................5

*Bywaters v. United States,*

   670 F. 3d 1221, *reh'g denied,* 684 F. 3d 1295 (Fed. Cir. 2012)...................19

*CAC v. DriveTime Automotive Group Inc. et al.*

   Case No. 2:13-cv-01531-SJO-MRW (C.D. Cal.) ...........................5

*Camacho v. Bridgeport Fin., Inc.,*

   523 F. 3d 973 (9th Cir. 2008) .......................................................20

*Caron v. Lifestyle Crafts, LLC,*

   No. CV-12-00124, 2013 WL 791287 (D. Ariz. Mar. 4, 2013).....................23

*Cent. Soya Co. v. Geo A. Homel & Co.*,

   723 F. 2d 1573 (Fed. Cir. 1983) ...............................................23

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*,

   No. 11-1175-RGA, 2014 WL 4675002 (D. Del. Sept. 12, 2014)....................................6

*Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*,

   No. 07 C 623, 2014 WL 6978644 (N.D. Ill. Dec. 10, 2014) ........................................14

*City of Bulington v. Dague*,

   505 U.S. 557 (1992)...............................................20

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Assn'n*,

   776 F. 3d 1343 (Fed. Cir. 2014) ...............................................13

*Credit Managers Ass'n of S. Cal. v. Kennesaw Life and Accident. Ins. Co.*,

   25 F.3d 743 (9th Cir. 1994) ...............................................20, 21

*Deep Sky Software, Inc. v. Southwest Airlines Co.*,

   Case No. 3:10-cv-1234 CAB (KSC) (S.D. Cal.)(Order, August, 19, 2015) .................24

*Ebay Enterprise, Inc. v. Lockwood*,

   Case CBM 2014-00026 (PTAB May 15, 2014)(Paper 25) ...........................................18

*Gracie v. Gracie*,

   217 F.3d 1060 (9th Cir. 2000). ...............................................20

*Highmark v. Allcare Health Management System*,

   687 F. 3d 1300 (Fed. Cir. 2012) ...............................................19

*Homeland Housewares, LLC v. Sorensen Research*,

   581 F. App'x 877 (Fed. Cir. Sept. 8, 2014) ...............................................14

*Hoover Group, Inc. v. Custom Metalcraft, Inc.*,

   84 F. 3d 1408 (Fed. Cir. 1996) ...............................................6

*Howes v. Med. Components, Inc.*,

   761 F. Supp. 1193 (E.D. Pa. 1990) ...............................................24

*IA Labs CA, LLC v. Nintendo Co.*,

   No. CIV. PJM 10-833, 2012 WL 1565296 (D. Md. May 1, 2012) ...............................23

TABLE OF AUTHORITIES

*ICU Med. v. Alaris Med. Sys.*,
  2007 WL 6137002 (C.D. Cal. June 28, 2007) ..................................................21

*ICU Med., Inc. v. Alaris Med. Sys.*,
  2007 U.S. Dist. LEXIS 34467 (C.D. Cal. Apr. 16, 2007) .............................12

*Indus., Inc. v. Celanese Polymer Specialties Co.*,
  840 F.2d 1565 (Fed. Cir. 1988) ..................................................................24

*Intellect Wireless, Inc. v. HTC Corp.*
  No. 09 C 2945, 2015 WL 136142 (N.D. Ill. Jan. 8, 2015) .........................24

*Internet Patents Corporation (IPC) v. Active Network, Inc.*
  (Fed. Cir. June 23, 2015) .............................................................................11

*Judin v. United States*,
  110 F.3d 780 (Fed. Cir. 1997) ......................................................................6

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975.) ........................................................................20

*Kilopass Tech. Inc. v. Sidense Corp.*,
  No. C 10-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) ............6

*Lakim Indus., Inc. v. Linzer Products Corp.*,
  No. 2:12-cv-04976, 2013 WL 1767799 (C.D. Cal. Apr. 24, 2013) ........19, 20

*Lam, Inc. v. Johns-Manville Corp.*,
  718 F. 2d 1056 (Fed. Cir. 1983) ..................................................................19

*LendingTree, LLC v. Zillow, Inc.*,
  54 F. Supp. 3d 444 (W.D.N.C. 2014) ............................................................5

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
  No. C 13-159 CW, 2014 WL 4616847 (N.D. Cal. Sept. 15, 2014) ............14

*Mathis v. Spears*,
  857 F. 2d 749 (Fed. Cir. 1988). ..................................................................23

*Miscrostrategy Inc. v. Crystal Decisions, Inc.*,
  586 F. Supp. 2d 256 (D. Del. 2008) ............................................................23

iv
TABLE OF AUTHORITIES

*Missouri v. Jenkins*,

   491 U.S. 274 (1989)...................................................................................23

*Octane Fitness, LLC v. ICON Health & Fitness*,

   134 S. Ct. 1749 (2014) ...............................................................................5

*OIP Technologies, Inc. v. Amazon.com, Inc.*

   (Fed. Cir. June 6, 2015) ............................................................................11

*Perdue v. Kenny A. ex rel. Winn*,

   559 U.S. 542 (2010)...................................................................................19

*PPG Indus., Inc. v. Celanese Polymer Specialties Co.*,

   840 F.2d 1565 (Fed. Cir. 1988) . ..............................................................24

*S. Bravo Sys., Inc. v. Containment Techs. Corp.*,

   96 F.3d 1372 (Fed. Cir. 1996)......................................................................6

*Scott Paper Co. v. Moore Bus. Forms, Inc.*,

   604 F. Supp. 835 (D. Del. 1984)................................................................24

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,

   753 F.3d 1291 (Fed. Cir. 2014) ...................................................................6

*Special Devices, Inc. v. OEA, Inc.*,

   269 F.3d 1340 (Fed. Cir. 2001) .................................................................23

*Summit Data Sys., LLC v. EMC Corp.*,

   Case No. No. 10–749–GMS, 2014 WL 4955689 (D. Del. Dec. 22, 2014)...................14

*Summit Data Sys., LLC v. EMC Corp.*,

   No. 1:10-cv-00749-GMS, 2014 WL 4955689 (D. Del. Sept. 25, 2014) ........................5

*Takeda Chem. v. Mylan*,

   549 F.3d 1381 (Fed. Cir. 2008) .................................................................21

*Taurus IP, LLC v. DiamlerChrysler Corp.*,

   726 F. 3d 1306 (Fed. Cir. 2013). ................................................................9

*TechRadium, Inc. v. FirstCall Network, Inc.*,

   No. H-13-2487, 13-2641, 2015 WL 862326 (S.D. Tex. Feb. 27, 2015) ........................5

TABLE OF AUTHORITIES

*Versata Dev. Group, Inc. v. SAP Am., Inc.*,
   2015 U.S. App. LEXIS 11802 (Fed. Cir. July 9, 2015) ................................12

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
   208 F.3d 981 (Fed. Cir. 2000) ................................................................6

*Wechsler v. Macke Int'l Trade Inc.*,
   327 F. Supp. 2d 1139 (C.D. Cal. 2004) ....................................................6

*Wechsler v. Macke Int'l Trade, Inc.*,
   486 F.3d 1286 (Fed. Cir. 2007) ..............................................................6

*WildTangent, Inc. v. Ultramercial LLC*,
   134 S. Ct. 2870 (2014) ........................................................................13

*Wine Grp. LLC v. L. and R. Wine Co., Inc.*,
   No. 2:10-cv-02204-MCE-KJN, 2012 WL 3962500 (E.D. Cal. Sept. 10, 2012) ...........14

*Yufa v. TSI Inc.*,
   No. 09-cv-01315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014) ......................6

*Yufa v. TSI Incorporated*,
   Case No. 09–cv–01315–KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014). ..........20

**STATUES**

35 U.S.C. § 101 ................................................................................4, 12, 13, 24

35 U.S.C. § 102 ................................................................................22

35 U.S.C. § 103 ................................................................................22

35 U.S.C. § 285 ................................................................................3, 23

35 U.S.C. § 325(d) ............................................................................17

35 U.S.C. § 325(e) ............................................................................17

35 U.S.C. § 327 ................................................................................18

37 C.F.R. § 42.302 ............................................................................18

37 C.F.R. § 42.24(c)(1) ......................................................................17

37 C.F.R. § 42.72 ..............................................................................18

# OTHER AUTHORITIES

AIA § 18(a)(1)(B) ........................................................................................................18

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

From its inception, Plaintiff CAC's conduct in this patent infringement litigation – and that of its counsel – has been well beyond the ordinary bounds for the advancement of any legitimate patent rights or zealous advocacy.[1] Indeed, the record reflects that CAC commenced this action without a proper pre-suit investigation, and that its claims were objectively baseless. This failure led to CAC's filing of a complaint reflecting multiple Rule 11 violations. Almost immediately after CAC's counsel served its defective complaint, Defendants brought a Rule 11 motion detailing fatal flaws with the complaint, including the fact that CAC lacked a good faith basis to allege Defendant Don Hankey played any role in committing any act of infringement. CAC had no answer to Defendants' motion, but at the Court's request, Defendants took the motion off calendar so that CAC could take targeted discovery from Mr. Hankey to determine whether he was involved in the alleged infringement (an investigation which Rule 11 required CAC to conduct *prior* to suing him). Despite receiving thousands of pages of production documents, including documents from Mr. Hankey, CAC never sought his deposition and never identified any fact or document suggesting Mr. Hankey personally committed any act of infringement. Notwithstanding these indisputable facts, CAC never dismissed Mr. Hankey and instead forced him, in continuing violation of Rule 11, to defend this action before two tribunals (this Court and the United States Patent Trial Appeal Board "PTAB") for over two years.

CAC's conduct concerning Mr. Hankey was not its only Rule 11 violation in this case. Indeed, long after any reasonable counsel could persist with its infringement claims in the face of direct, specific, adverse authority from the Supreme Court of the United States and Federal Circuit, CAC continued to assert its infringement case in this Court and continued to assert its invalid patent before the PTAB. Even today, CAC continues to

---

[1] It is undisputed that Defendants defeated every aspect of CAC's complaint and are therefore eligible to seek the award of their attorneys' fees and costs under the Patent Act.

act before the PTAB to keep its invalid patent alive so that it can continue to extort exorbitant royalty payments from DriveTime Automotive Group, Inc**.,** a defendant from another case in this Court which CAC bullied into an unfair settlement. CAC also advanced a number of infringement positions against Defendants' products and services which could not have been presented after a proper Rule 11 investigation of publicly available information or after CAC received Defendants' discovery.

Finally, throughout the litigation of CAC's infringement case in this Court and through two Covered Business Method Review petitions in the PTAB, CAC and its counsel have needlessly multiplied proceedings and pursued numerous motions and arguments in bad faith. The clearest example of this conduct came following the Supreme Court's Alice decision in the spring of 2014, in the midst of the first CBM review. Immediately following that decision, CAC opposed Westlake's motion to the PTAB requesting that the CAC patent claims which escaped review in CBM-1 be considered in light of the Supreme Court's controlling authority. As a result of this opposition, the invalidation of the remaining CAC patent claims required Westlake's prosecution of a second CBM, the trial for which takes place on September 10. CAC's insistence on a second CBM resulted in over $300,000 in additional defense costs.

CAC's belated acknowledgement of its frivolous and untenable position in this Court reflected in the motion dismissing its claims did not cure the above injuries to Defendants. Indeed, CAC's motion reflected only its lust for additional undeserved ongoing royalty payments for its invalid patent; not the absurd notion its counsel claimed that "this is America and my client simply does not want to be in this lawsuit anymore".

In sum, CAC and its counsel engaged in litigation conduct that was expressly designed to burden Westlake and increase the costs of defending against CAC's baseless litigation. For these reasons, the Court should find this case exceptional under the Patent Act and award Defendants their reasonable attorneys' fees and costs.

## II.   PROCEDURAL TIMELINE

### A.   District Court Litigation

On March 4, 2013, CAC filed its Complaint for patent infringement against Defendants ("Complaint"), asserting U.S. Patent No. 6,950,809 ("'807 Patent") entitled "System and Method for Providing Financing." ECF No. 1. Defendants filed their First Amended Answers and Counterclaims on June 11, 2013. ECF Nos. 23, 28, and 49. Defendants' Counterclaims requested attorneys' fees pursuant to 35 U.S.C. § 285. *Id.*

On May 15, 2013, Defendants filed their Motion for Sanctions. ECF No. 31 (re-filed on May 22, 2013 as ECF No. 35). *See* Exhibit F, JvLS Decl ¶34. At the Court's request, Defendants took the motion off calendar in order for targeted discovery to be taken on issues raised in the motion. ECF No. 48. On November 15, 2013, Defendants successfully moved for a stay of the case pending the PTAB's review. ECF No. 58. On December 30, 2013, this Court granted the motion for stay pending resolution of the CBM proceeding.ECF No. 67.

Despite the fact the CBM proceeding was still pending, Plaintiff sought to interfere with the automatic stay. On May 12, 2014, Plaintiff filed a motion seeking to lift stay. ECF No. 70. On June 16, 2014, the Court declined to lift the stay. ECF No. 80. On June 23, 2015, Plaintiff filed a Motion to Voluntarily Dismiss the case with Prejudice, which "would operate as a resolution of the case on the merits in Westlake's favor." ECF No. 99 at 2-3. On August 24, 2015, this Court granted Plaintiff's motion to voluntarily dismiss with prejudice. ECF No. 109. The Court concluded that "if any attorneys' fees motion is filed after dismissal, the Court need not retain jurisdiction over Defendants' counterclaim. Of course, the Court retains jurisdiction to adjudicate the fees motion." *Id.*

## B.   Covered Business Method Proceeding

On October 11, 2013, Westlake filed a first Covered Business Method petition with the Patent Trials and Appeals ("PTAB"), CBM 2014-00008 ("CBM-1"). The Board declined to institute review of claims 10-12, 14-33 in CBM-1. *See* CBM-1, PN 30. On June 19, 2014, the Supreme Court issued its decision in *Alice Corp. Pty. Ltd v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ("*Alice*").

On June 25, 2014, Westlake requested a conference call with the Board to discuss a request for authorization to file a second request for rehearing of the Board's decision instituting CBM-1 review. CBM-2, PN 40 at 2. The purpose of the rehearing request would be to have CBM-1 cover the remaining claims which were not instituted. *Id*. CAC opposed Westlake's request, even stating that the "*Alice* decision has no impact on the analysis of whether those claims recite statutory subject matter." *Id*. This CAC position resulted in Westlake being forced to bring another petition, CBM-2.

February 9, 2015, the Board instituted review of claims 10-12 and 14-33 in CBM-2 on § 101 grounds stating that "[i]n light of [the] recent guidance from the Supreme Court and the Federal Circuit, we are persuaded that Petitioner's evidence, *if not rebutted*, would demonstrate that *it is more likely than not that claims 10-12 and 14-33 are directed to non-statutory subject matter*." CBM-2, PN 15 (emphasis added). Patent Owner did not request rehearing on the institution decision.

Following a full briefing and hearing, on March 24, 2015, the Board issued its Final Written Decision in CBM-1, concluding that "claims 1-9, 13, 34-42 of the '807 Patent have been shown by a preponderance of the evidence to be unpatentable under 35 U.S.C. §101." CBM-1, PN 66 (Final Written Decision). CAC did not seek rehearing of the Final Written Decision and did not appeal it to the Federal Circuit.

With direction from PTAB, Defendants filed a second petition on August 15, 2014 (CBM2014-00176, "CBM-2"). The final hearing on CBM-2 is scheduled for September 10, 2015. The Final Written Decision on CBM-2 is due no later than February 6, 2016[2].

## III.   ARGUMENT

### A.   This Is An Exceptional Case Under The Patent Act

"The court in exceptional cases may award reasonable attorney fees to the prevailing party" in a patent case. 35 U.S.C. § 285. A case is "exceptional" under § 285 simply if it "stands out from others with respect to the substantive strength of a party's

---

[2] According to USPTO AIA Statistics, as of July 31, 2015, 79% of Final Written Decisions in CBM Proceedings found all instituted claims to be unpatentable.

4

litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness*, 134 S. Ct. 1749, 1751 (2014). This is a significantly lower bar than that articulated by the Federal Circuit in *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). Under the new standard, conduct need not be sanctionable to justify the award of fees. *Octane Fitness*, 134 S. Ct. at 1751. "[N]o bright-line rules define the parameters of what is exceptional, and no single element (such as baselessness or sanctionability) is dispositive." *LendingTree, LLC v. Zillow, Inc.*, 54 F. Supp. 3d 444, 457 (W.D.N.C. 2014). Common examples of exceptional behavior include evidence that the plaintiff: "failed to conduct an adequate prefiling investigation or to exercise due diligence before filing suit; … knew or should have known that its claim was meritless or lacked substantive strength; … initiated the litigation to extract settlements from defendants…; proceeded in bad faith; or litigation misconduct." *TechRadium, Inc. v. FirstCall Network, Inc.*, No. H-13-2487, 13-2641, 2015 WL 862326, at *8 (S.D. Tex. Feb. 27, 2015). Past nuisance-value settlements is also support for a court's determination that the case was exceptional. *Summit Data Sys., LLC v. EMC Corp.*, No. 1:10-cv-00749-GMS, 2014 WL 4955689 at *4 (D. Del. Sept. 25, 2014) ("Summit's practice of extracting settlements worth a fraction of what the case would cost to litigate supports a finding of exceptionality.").[3]

CAC's pattern of naming improper defendants, asserting unsupportable infringement claims, and filing baseless motions is demonstrative of an exceptional case.

## 1. CAC Failed To Conduct A Reasonable Pre-Suit Investigation

In the context of patent infringement actions, the Federal Circuit interprets Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement. *See Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir.

---

[3] CAC seeks to continue to enforce the unfair patent license agreement with DriveTime Automotive Group Inc. in *CAC v. DriveTime Automotive Group Inc. et al*. Case No. 2:13-cv-01531-SJO-MRW (C.D. Cal.).

5

2002); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000); *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997); *S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996). Furthermore, Courts have awarded attorneys fees under § 285 where plaintiffs made only meager efforts in pre-suit investigation. *See, e.g., Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. 11-1175-RGA, 2014 WL 4675002 (D. Del. Sept. 12, 2014) (awarding attorneys' fees where the plaintiff only put forth "meager effort" in the pre-suit investigation and the plaintiff's infringement positions were frivolous); *see also Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014); *see also Yufa v. TSI Inc.*, No. 09-cv-01315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014) (inadequacy of pre-filing investigation would have revealed claim was meritless),

### a. CAC's Improper Claims Against Don Hankey

When filing its complaint on March 14, 2013, CAC named Don Hankey personally as one of the defendants without any evidence that Don Hankey himself performed any acts of infringement. *See, e.g., Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1302 (Fed. Cir. 2014) ("A patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement."). This Court and the Federal Circuit have held that in order to find a corporate director or officer such as Mr. Hankey liable for patent infringement, one must pierce the corporate veil or demonstrate that the director or officer actively participated in the infringement. *See Wechsler v. Macke Int'l Trade Inc.*, 327 F. Supp. 2d 1139 (C.D. Cal. 2004) *aff'd sub nom., Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286 (Fed. Cir. 2007) (finding sole shareholder not liable for company's patent infringement; for officers of corporation to be held personally liable for a corporation's patent infringement, there must be evidence to justify piercing corporate veil; and finding that corporation's officers acting within scope of their employment precludes liability of officers in their individual capacities with respect to corporation's patent infringement) *see also Hoover Group, Inc. v. Custom*

6

*Metalcraft, Inc.*, 84 F.3d 1408 (Fed. Cir. 1996) (holding that to be held personally liable for corporation's patent infringement, corporate officer must act culpably in that the officer must actively and knowingly assist with corporation's infringement; holding that it is an insufficient basis for personal liability that officer had knowledge of acts alleged to constitute infringement). A reasonable inquiry under the circumstances would have revealed that there was no basis in law or fact to include either Don Hankey or the Hankey Group in the Complaint.

On April 16, 2013, counsel for Defendants met and conferred with counsel for CAC to discuss the improper naming of Don Hankey as a Defendant. The next day, Defendants provided CAC with a copy of the Motion for Sanctions under Rule 11 for improperly naming Don Hankey, setting forth the legal and factual basis for why Don Hankey could not, and should not be a named defendant. CAC continued to refuse to dismiss Don Hankey.  Therefore on May 15, 2013, Defendants filed its Motion for Sanctions. ECF No. 31 (re-filed on May 22, 2013 as ECF No. 35). On May 28, 2013, the Court held a scheduling conference in the matter.  ECF No. 47. The Court urged counsel for the parties to discuss the dismissal of Mr. Hankey as a defendant as there appeared to be few facts, if any, warranting his inclusion as a defendant in the case. ECF No. 48 at 2. The Court suggested that Defendants withdraw its motion so that further discovery could be taken on Don Hankey, stating:

> I'm simply looking at his website and looking at Rule 11, and Rule 11 allows a party to be included if—if there is evidentiary support or likely to have evidentiary support after reasonable opportunity for further investigation. So what this will allow the Plaintiff to do is to take the deposition of Mr. Hankey. And I assume he does not want that to be accomplished. And then when the deposition of Mr. Hankey is taken, all of this can be discussed and looked at and further parsed. And if it appears that he's improperly named, at that point it would—it would, I think, be wise for the Plaintiff to drop Mr. Hankey as a named party and maybe the Hankey Group as a named party. But that's for another date and time after some reasonable discovery.

ECF No. 44, 8:20-9:9 (May 28, 2013 Scheduling Conference Transcript).

On June 11, 2013, Defendants withdrew the Motion for Sanction with a caveat:

7

> Defendants maintain that neither Mr. Hankey nor Hankey Group is a proper defendant in this case. Nevertheless, at the Courts urging, Defendants hereby withdraw the Motion pursuant to Local Rule 7-16 so that discovery may be taken on the issues raised by the Motion." Notice of Withdrawal, Dkt. No. 48 at 3. I addition, Westlake also "expressly reserve[d] their right to renew and refile the Motion after the parties have had an opportunity to take discovery on the matter per the Court's suggestion.

ECF No. 48.

In the face of Defendants' Rule 11 motion charging CAC with, among other things, lacking a good faith basis to charge Defendant Don Hankey with patent infringement, the Court permitted CAC to take limited discovery of Mr. Hankey in order to assess the level of his involvement, if any. CAC did not diligently pursue an investigation of those facts. JvLS Dec. ¶32. On June 13, 2013, CAC served its Amended First Set of Requests for Production on all defendants which contained Requests 1-36. Defendants proceeded to spend the next few months collecting and preparing documents for production. After an exchange between the parties, on September 20, 2013, Westlake produced the entirety of Don Hankey's responsive documents in his possession, DONHANKEY0000001-0000075. His production consisted of: (1) Articles of Incorporation, (2) Bylaw, (3), Executed 3rd Amended Operating Agreement, (4) Files Articles or Organization, and (5) 2013 Organization chart.

In Mr. Hankey's files, and specifically in his production documents, there were no documents related to Mr. Hankey's personal involvement in Defendants alleged infringing activities, because – as Defendants' Rule 11 motion made plain – Mr. Hankey had no personal involvement whatsoever in any aspect of Defendants' allegedly infringing activities. JvLS Decl.¶32. Following the production of Mr. Hankey's documents, CAC never suggested additional documents were improperly withheld, and *never* sought to depose Mr. Hankey. *Id*. Nevertheless, CAC never took steps to dismiss Mr. Hankey as a defendant in this case despite the fact that Defendants' substantial document production related to its allegedly infringing activities demonstrated that Mr. Hankey was not involved in those activities. *Id*. Nor did CAC serve any targeted

8

1  discovery to Mr. Hankey related to its theory of alter ego liability. There was no good

2  faith basis for the false allegation as Mr. Hankey played no role in the day to day

3  operation of either Westlake or Nowcom. ECF Nos. 35-1 and 35-2.[4]

4      As a result of CAC's misconduct, Don Hankey remained personally named as an

5  accused infringer throughout the entire case. In point of fact, CAC had no basis for

6  naming Don Hankey as an individual defendant in this case. In its Complaint, CAC does

7  not (and cannot) allege that Mr. Hankey is the alter ego of Westlake Financial Services

8  ("Westlake") or Nowcom Corporation ("Nowcom"). There was no basis for CAC or its

9  counsel to allege Mr. Hankey personally made, used, sold, imported or offered for sale

10 any allegedly infringing product or service, nor is there any good faith basis for CAC to

11 make such an allegation. Although the case was dismissed before Defendants could re-

12 file this Motion for Sanctions, CAC should be held accountable for improperly naming

13 Don Hankey in his personal capacity as a defendant in this case.

14          **b.  CAC's Unsupportable Infringement Positions**

15      Furthermore, CAC's infringement claims were objectively baseless where no

16 reasonable litigant could reasonably expect success on the merits. *Taurus IP, LLC v.*

17 *DiamlerChrysler Corp.*, 726 F. 3d 1306, 1327 (Fed. Cir. 2013).

18      As taught by the patent, the patent claims a method or system for providing

19 financing of a product. Claim 1 claims:

20          1. A method for providing a financing source to a customer to purchase a
21          product selected from an inventory of products, the method comprising the
            steps of:
22          receiving information related to a database of a dealer's inventory, wherein
23          the dealer's inventory includes a plurality of products, each product having a
            dealer cost associated therewith and a sale price at which the dealer desires
24          to sell the product;
25          receiving information from the customer including a down payment amount

26

27  [4] Similarly, there was no reasonable basis for naming Hankey Group, a non-existent
    entity. ECF No. 35-3. Reference to the group of companies does not render individual
28  members of that group liable for the actions of another. In its Complaint, CAC fails to
    allege any single fact related to any of the companies.

                                          9

which the customer has available for a down payment towards the purchase
of a product;

calculating a credit score for the customer based at least in part on the
information gathered from the customer;

determining an advance amount to be paid to the dealer from the financing
source for each individual product in the dealer inventory in the event that
that particular product is sold to the customer;

calculating a front-end profit to be realized by the dealer for each individual
product in the dealer inventory based on the dealer cost associated with each
individual product, the advance amount determined for each individual
product, and the down payment amount;

and presenting a financing package to the dealer for each individual product
in the dealer's inventory for immediate offer for sale to the customer.

Each of the asserted claims[5] (except for Claim 34) require that "each product [has]
a dealer cost associated therewith." '807 Patent. As proposed by CAC, "dealer costs"
should be defined as "the plain and ordinary meaning, i.e., the costs to the dealer in
obtaining and/or preparing the product." *See* ECF No. 60 (Joint Claim Construction Chart
and Prehearing Statement) at 8. As support for its infringement of this claim term, CAC
makes the conclusory statement that

By way of example, and as demonstrated by the evidence below, the
Accused Instrumentality calculates a front-end profit to be realized by the
dealer for each individual product in the dealer inventory ***based on the
dealer cost associated*** with each individual product, the advance amount
determined for each individual product, and the down payment amount.

*See* Exhibit F, JvLS Decl., pgs. 5-11, 30. CAC also provides a series of screen shots from
Defendants' websites. *Id*. at pgs. 7-10, 32-48. However, ***none*** of these screen shots (for
this claim, or any of the other asserted claims) show that a "dealer cost" is taken into
consideration. In fact, none of the Accused Instrumentalities[6] take into consideration or
apply a "dealer cost" when generating a finance package. *See* Declaration of Robert
Lekstrom In Support of Defendants' Motion for Attorneys Fees, ¶6. In other words,

---

[5] The Asserted Claims of the '807 Patent were claims 1, 4, 7, 8, 9, 14, 18, 19, 25, 34, 41.
*See* Exhibit F, JvLS Decl., at pg. 2.
[6] The "Accused Instrumentalities" are the Dealer Center®, Buy Program™, Auto
Structure All, ProfitBuilder®, ALPS (Advanced Lending & Portfolio Services), and
Partner Program. *See* Exhibit F, JvLS Decl., at pg. 2-6.

10

CAC's failure to possess or discovery any evidence of the claim term, "dealer cost", which is central to the asserted claims, demonstrates that CAC's patent infringement suit was objectively baseless.

Moreover, CAC also alleged that the Accused Instrumentalities infringed Claims 7 and 8 which require the pooling of collateral.

Claim 7 provides

> The method of claim 4 further comprising the steps of providing financing to a plurality of customers for the purchase of a plurality of products from the dealer, and applying the advance amount from each transaction to a collateral pool, whereby the fraction of the collected payments from each customer is applied to offset a total amount advanced for all transactions.

Claim 8 provides

> The method of claim 7 further comprising the step of capping the collateral pool after a fixed number of financing transactions have been entered such that advances paid to the dealer for financing transactions entered after the collateral pool has been capped are applied to a second collateral pool.

CAC never had any evidentiary support for infringement of these claims, nor a good faith basis to believe that such evidence would be developed in discovery. In its Preliminary Infringement Contentions, CAC provides a series of screen shots, ***none*** of which demonstrate that the pooling of collateral occurs. *See* Exhibit G, JvLS Decl. ¶36. (ii) (PICs at p. 250-264). None of the Accused Instrumentalities utilize a collateral pool. *See* Declaration of Robert Lekstrom In Support of Defendants' Motion for Attorneys' Fees, ¶9. CAC's assertion of these claims was objectively baseless as it had no evidence, and could never gather any evidence that collateral pooling occurred with any of the Accused Instrumentalities.

## 2. CAC Maintained Its Accusations Against Westlake Even After *Alice*

CAC's failure to recognize the dramatic sea change heralded by *Alice* and the Federal Circuit and PTAB cases which followed it is just one example of its unreasonable litigation tactics.[7] *See also* section II(A)(3), below. Plaintiff's case lacked merit even

---

[7] Specifically, several Federal Circuit decisions and PTAB decisions post-*Alice* have found claims similar to the '807 unpatentable subject matter.  *See OIP Technologies, Inc. v. Amazon.com, Inc.* (Fed. Cir. June 6, 2015); *Internet Patents Corporation (IPC) v.*

prior to that decision, but *Alice* made clear that the patent at issue could not possibly be valid under this new 35 U.S.C. § 101 interpretation. JvLS Decl., ¶ 33. No reasonable litigant would have still pursued the claims, yet CAC continued to do so, and CAC continues to pursue these frivolous positions today in CBM-2. *Id.* CAC's conduct following the Supreme Court's decision in *Alice* also evidenced a plaintiff who failed to drop its case when it was apparent it could not prevail. This failure to abandon the case following the fundamental change in law resulted in Defendants incurring unreasonable and unnecessary litigation costs and expenses in the amount of $1,165,147.73. JvLS Decl. ¶33. *ICU Med., Inc. v. Alaris Med. Sys.*, 2007 U.S. Dist. LEXIS 34467, *50-51, 2007 WL 6137003 (C.D. Cal. Apr. 16, 2007) (noting that a party may be sanctioned if any "challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected").

Notably, both this Court and the Board recognized the importance of *Alice* and the intervening change in law. *See* ECF No. 88 at 5 ("there are unique circumstances here: the Court has repeatedly emphasized the importance of *Alice* to any potential resolution."); *See also* CBM-2, PN 28 at 6 ("We also considered the nature of the change in the law: here two Supreme Court decisions, one of which vacated key precedent on which the CBM-008 Decision to Institute relied, as well as a Federal Circuit decision effectively reaching a conclusion opposite of that key precedent.")

After CBM-1 was instituted, the Supreme Court decided *Alice.* The Supreme Court held in *Alice* that the patent claims were not patent-eligible under 35 U.S.C. § 101. The patent claims at issue were styled as a method for exchanging financial obligations, a computer system configured to carry out the method, and a computer-readable storage medium containing program code for causing a computer to perform the method. The

---

*(cont'd from previous page)*
*Active Network, Inc*. (Fed. Cir. June 23, 2015); *Versata Dev. Group, Inc. v. SAP Am., Inc*., 2015 U.S. App. LEXIS 11802, 70-72 (Fed. Cir. July 9, 2015); *See Bank of Am., N.A v. Intellectual Ventures I LLC*, Case No. CBM2014-00028, Final Written Decision, PN 52 at 14 (P.T.A.B. May 18, 2015).

claims of the '807 patent are analogous to *Alice.*

Following the fundamental change in law in *Alice,* Defendants made a request to file a second request for rehearing in light of *Alice.* CBM-1, PN 40 at 2. The rehearing would be directed solely to the claims on which a covered business method patent review was not instituted, and would show that the PTAB erred in not instituting a review of the claims under 35 U.S.C. §101 based on the *Alice* decision. *Id.*

Despite the obvious impact of the *Alice* decision, CAC opposed Defendants' request. CAC even boldly argued that the *Alice* decision "has **no impact** on the analysis of whether those claims recite statutory subject matter." CBM-1, PN 40 at 2 (emphasis added). As a result, Defendants had to expend resources to bring an entirely separate petition (CBM-2), which resulted in an additional expenditure of $378,759.58 in fees and expenses. *See* JvLS Decl.¶33.

In its Institution Decision in CBM-2, the Board relied on *Alice* and *WildTangent, Inc. v. UltramercialLLC,* 134 S. Ct. 2870 (2014)("*Ultramercial III")* to conclude that independent Claim 10 depends on claim 1, and "claim 10 recites applying the abstract idea on a generic computer. This is analogous to the claims in *Alice.*" CBM-2, PN 15 at 13. The Board also found that independent claim 14 "does not recite to providing financing in a 'particular manner'" and the claim's recitation to "generic computer components ('database,' 'user terminal,' 'server,' and 'network')" did not salvage the claim because it is "an abstract idea, applied using generic computers." *Id.* at 13-14. "Similar to the claims in *Alice, Ultramercial III,* and *Accenture,* the computer components recited in the claims are recited functionally, and generically, without any detail as to their configuration and implementation." CBM-2, PN 15 at 15.  The Board correctly assessed that the remaining '807 Patent claims contain no inventive concept, "[b]ased on the current record, we are persuaded that the limitations to which Patent Owner refers simply 'limit the use of an abstract idea to a particular technological environment,' which is not according to *Alice,* sufficient to impart patent eligibility." CBM-2, PN 15 at 17; citing *Alice* and *Content Extraction & Transmission*

*LLC v. Wells Fargo Bank, Nat. Assn'n*, 776 F. 3d 1343 (Fed. Cir. 2014).

In response to this decision, Westlake moved for reconsideration such that all the claims which are now the subject of CBM-2 could be considered under the new law as part of CBM-1. Specifically, Westlake sought permission to file a motion for rehearing "solely to the claims on which a covered business method patent review was not instituted, and would show that [the Board] erred in not instituting review of those claims under 35 U.S.C. § 101 based on the *Alice* decision." CBM-1, PN 40 at 2. CAC opposed the request and as a result, Westlake had to file a second CBM, effectively doubling Westlake's costs to invalidate the patent and delaying final resolution of the case. As a tangible cost of CAC's unreasonable position, Westlake has expended over $ 378,759.58 in fees and costs to date prosecuting CBM-2. JvLS Decl. ¶33.

### 3.  CAC's Unreasonable Litigation Conduct

CAC unreasonably prolonged and multiplied this case, burdening Westlake with onerous attorneys' fees. Several courts have awarded fees under similar circumstances where the patentee has engaged in unreasonable litigation conduct designed to prolong the case. *See Wine Grp. LLC v. L. and R. Wine Co., Inc.*, No. 2:10-cv-02204-MCE-KJN, 2012 WL 3962500, at *11 (E.D. Cal. Sept. 10, 2012); *Homeland Housewares, LLC v. Sorensen Research,* 581 F. App'x 877, 881 (Fed. Cir. Sept. 8, 2014) (affirming fees award and finding "vigorous enforcement 'cannot overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith'") (citation omitted); *see also Summit Data Sys., LLC v. EMC Corp.*, Case No. No. 10–749–GMS, 2014 WL 4955689, at *5 (D. Del. Dec. 22, 2014) "[T]he court is convinced that an award of attorneys' fees in this case is necessary to deter this sort of reckless and wasteful litigation in the future."); *see also Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, No. 07 C 623, 2014 WL 6978644 (N.D. Ill. Dec. 10, 2014) (awarding attorneys' fees under section 285 where the "[plaintiff's] litigation conduct in the face of the weakness of its infringement claims [stood] out from most other patent cases to which [the] court ha[d] been assigned."); *Linex Techs., Inc. v. Hewlett-Packard*

14

*Co.*, No. C 13-159 CW, 2014 WL 4616847 (N.D. Cal. Sept. 15, 2014) (plaintiff exhibited "an overall vexatious litigation strategy" by continuing to hold the groundless claims over the defendants' heads to increase potential settlement amounts and attempt to broaden the reach of its patents to capture technology it knew it did not invent).

Throughout the litigation, CAC engaged in frivolous litigation tactics in both the district court and the CBM proceedings to unnecessarily impose additional expenses and costs incurred by Westlake. CAC's frivolous and unreasonable litigation conduct makes this case constitute an "exceptional" one and merits the award of attorneys' fees.

### a. CAC's Futile Attempts To Oppose And Lift The Stay

As this Court is aware, CAC opposed the initial Motion to Stay pending CBM Proceeding and filed multiple motions to attempt to lift the stay (despite clear legal authority mandating the stay). Such opposition to the litigation stay was entirely improper and abusive as it greatly increased the costs of litigation. Particularly as CAC ultimately decided to dismiss its own case, such litigation tactics were even more vexatious as all of these motions were wholly unnecessary.

Shortly after filing Covered Business Method petition CBM2014-00008 ("CBM-1"), on November 15, 2013, Westlake sought a stay in this Court's litigation to preserve judicial resources. ECF No. 58. On December 30, 2013, the Court granted Westlake's Motion to Stay Pending the CBM Proceedings, stating "the Court GRANTS Moving Defendants' Motion and STAYS this action pending resolution of the post-grant review proceedings for the '807 Patent under the Transitional Program for CBM Patents." ECF No. 67 at 8.

On May 19, 2014, CAC filed a Motion to Lift the Stay (ECF No. 70) which the Court denied, stating "[t]he Court declines to lift the stay at this time and denies Plaintiff's Motion without prejudice. The Court will reconsider the issue after the Supreme Court releases a decision in *Alice Corp.* The Court conditions this denial without prejudice on Westlake's filing its request for reconsideration to the PTAB within seven days of the release of the *Alice Corp.* decision." ECF No. 80.

Despite the still-pending CBM proceeding and the Court's previous ruling on the stay, CAC filed a Motion for Reconsideration of its prior Motion to Lift Stay.  ECF No. 82.  The Court again denied lifting the stay stating, "[t]hus, the Court DENIES Plaintiff's Motion and MAINTAINS the stay in this action."  *See* ECF No. 88 at 6 (July 21, 2014).

After Westlake filed a submission about the delay in filing the CBM-2 petition, on August 21, 2014, the Court then ordered that the stay in the case should continue. Specifically, the Court stated that "[t]he Court is in receipt of the Response (ECF No. 92) of Defendants Don R Hankey, Hankey Group, Nowcom Corporation, and Westlake Services LLC. The Court deems that this document satisfies the Order to Show Cause why stay of this case should not be lifted (ECF No. 91). **Accordingly, the stay on this case shall continue pending PTAB's decision**." *See* ECF No. 93 (emphasis added).

Such repeated attempts to lift the stay when the Court was clear in its order that the stay should be maintained until the conclusion of the CBM proceedings CAC ultimately caused an unnecessary increase in the costs of litigation fees.

### b.  CAC's Myriad CBM Abuses

CAC also has displayed signs of overly-aggressive litigation conduct. Additional motions brought without cause. Following Westlake's deposition of CAC's expert, Mr. John Nerenberg, CAC threatened to file a motion for sanctions due to alleged misconduct during the deposition. CBM-1, PN 48. The PTAB found that CAC could not articulate the improper basis of the questions and denied CAC's request for authorization to file a motion for sanctions. *Id*. at 4.

Next, CAC has also unsuccessfully attempted to interrupt Westlake's CBM proceedings against CAC on multiple occasions, to Westlake's financial detriment.  The Board instituted review of claims 10-12 and 14-33 on § 101 grounds stating that " [i]n light of [the] recent guidance from the Supreme Court and the Federal Circuit, we are persuaded that Petitioner's evidence, if not rebutted, would demonstrate that it is more likely than not that claims 10-12 and 14-33 are directed to non-statutory subject matter." CBM-2, PN 15 at 12. Instead of ceding to the fundamental change in law, CAC filed

1    multiple motions to terminate.

2         CAC filed its Preliminary Response in CBM-2 on November 20, 2014, (CBM-2,

3    PN 14). In its Preliminary Response, Patent Owner raised an estoppel argument and

4    sought to terminate the proceedings. CBM-2, PN 14 at 5. The Board concluded that

5    Patent Owner's argument regarding 35 U.S.C. § 325(e) was not yet ripe, but expressly

6    rejected Patent Owner's arguments for discretionary termination under § 325(d). CBM-2,

7    PN 15 at 21-22. The Board instituted review of claims 10-12 and 14-33 on § 101 grounds

8    stating that " [i]n light of [the] recent guidance from the Supreme Court and the Federal

9    Circuit, we are persuaded that Petitioner's evidence, if not rebutted, would demonstrate

10   that it is more likely than not that claims 10-12 and 14-33 are directed to non-statutory

11   subject matter." *Id*. at 12. Patent Owner did not request rehearing on the institution

12   decision.

13        Mere days before CAC's own Response in CBM-2 was due, it filed a Motion to

14   Terminate the CBM-2 proceedings. CBM-2, PN 25 (April 9, 2015). It again argued that

15   estoppel should apply to the claims not instituted in CBM-1 and that CBM-2 should have

16   not been instituted.

17        On May 14, 2015, the Board rejected CAC's request to terminate the CBM

18   proceedings. *See* CBM-2, PN 28.  In its Order, the Board stated that estoppel does not

19   apply to claims 10-12, 14-33 and that institution of CBM-2 was proper. *Id*. at 6-7.

20        CAC's unnecessary litigation conduct was again shown by a frivolous filing.

21   Several months before Defendants' Reply was due on July 7, 2015, the Patent Trials and

22   Appeal Board changed the page limits to allow 25 pages for Reply papers. The rule

23   change for Rule 42.24(c)(1) occurred on May 19, 2015 and was amended to raise the

24   page limit to 25 pages. *See* Amendments to the Rules of Practice for Trials Before the

25   Patent Trial and Appeal Board, 80 Fed. Reg. 28,561, 28,565 (May 19, 2015). Despite

26   PTAB prior rulings that the increased page limit occurred immediately to all pending

27   proceedings, CAC once again baselessly opposed Westlake using twenty-five (25) pages

28   for its briefing. The PTAB rejected CAC's arguments and found that CAC did not argue

17

1   "persuasively that it would be prejudiced." CBM-2, PN 32 at 3.

2       Even with the impending final hearing in CBM-2, CAC once again attempted to

3   terminate the CBM proceeding, unduly increasing Defendants expenses in the CBM

4   proceeding. On August 25, 2015, less than three weeks prior to the final hearing, CAC

5   requested a telephone conference with the PTAB in order to seek authorization to file a

6   motion to terminate under AIA § 18(a)(1)(B), 37 CFR § 42.72, 37 CFR § 42.302, and/or

7   35 USC § 327 because it believes that Westlake no longer has standing to maintain

8   CBM-2. CBM-2, PN 41 at 1. On September 1, 2015, the PTAB held a conference call to

9   discuss the issue. *Id*.

10      On September 3, 2015, the Board issued a Conduct of the Proceeding and

11  prohibited CAC from file briefing on its requested motion to terminate, stating that it

12  "would be a waste of the parties' and the Board's time." CBM-2, PN 41 at 5.

13      The PTAB disregarded CAC's reliance on the unambiguous statutes AIA §

14  18(a)(1)(B), 37 CFR § 42.302, and 35 USC § 327, stating that none of these rules apply

15  to CBM-2 because (1) AIA § 18(a)(1)(B) and 37 CFR § 42.302 requirements were met

16  because when CBM-2 was filed, Westlake was being accused of infringement and (2) 35

17  USC § 327 requires a joint request. *Id*. at 4-5. The Board also did not find that that was

18  "issue of first impression" as falsely claimed by CAC. *Id*. at 3-4.

19      The Board agreed with the reasoning in *Ebay Enterprise, Inc. v. Lockwood*, Case

20  CBM 2014-00026 (PTAB May 15, 2014)(Paper 25) and concluded that the requirements

21  of CFR Rule 42.302(a) need only be met at the time of filing:

22          The statute is unambiguous. By its terms, it specifies a requirement
            evaluated at the time a petition is filed. Patent Owner points us to no
23          language in the statute, and we see none, imposing a requirement of a
            continuous infringement controversy between the parties in order to
24          maintain a proceeding. Nor has Patent Owner cited to us authority calling
            into question the plain language of the statute.
25
26      *See* CBM-2, PN 41 at 4.

27  The Board further reasoned that CAC "points us to no contrary authority" and did not

28  provide "any basis beyond attorney argument for seeking termination while Petitioner has

18

presented clear authority showing that such relief would be inappropriate." *Id*. at 5.

In sum, CAC's multiple failed attempts to terminate the proceeding constitute frivolous and unreasonable litigation conduct which would make this case exceptional.

## B.   The Award Of Attorneys' Fees Is Justified And The Fees Are Reasonable

This Court has discretion in deciding the amount to award under section 285. *Lam, Inc. v. Johns-Manville Corp.*, 718 F. 2d 1056, 1068 (Fed. Cir. 1983). The Court should exercise its discretion to award fees that represent the "extra legal effort" Westlake had to expend to "counteract [plaintiff's] misconduct." *Highmark v. Allcare Health Management System*, 687 F. 3d 1300, 1316 (Fed. Cir. 2012) (quoting *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F. 2d 1547, 1553 (Fed. Cir. 1989). Reasonablness is considered in light of "the rates of the work by similar attorneys of comparable skill, experience, and reputation in the community." *Lakim Indus., Inc. v. Linzer Products Corp.*, No. 2:12-cv-04976, 2013 WL 1767799 at *8 (C.D. Cal. Apr. 24, 2013) ("Attorney affidavits regarding prevailing fees in the community and rate determinations in other cases are satisfactory evidence of the prevailing market rate."). CAC's meritless lawsuit forced Defendants to spend a total as of the date of this filing of $2,308,361.57 to defend itself: $1,345,623.70 in the District Court, $583,978.29 for CBM-1, and an additional $378,759.58 for CBM-2. JvLS Decl., ¶26.

### 1.   Calculation of Defendants' Reasonable Attorneys' Fees

An application of attorneys' fees will be evaluated for reasonableness compared to the "lodestar". *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). To determine the "lodestar," a court considers the amount at stake for the client, the results actually obtained, the sophistication of work, the prevailing forum rates, and the actual fee agreement between the firm and client. *Bywaters v. United States*, 670 F. 3d 1221, 1232, *reh'g denied*, 684 F. 3d 1295 (Fed. Cir. 2012).

The Ninth Circuit applies a two-part "lodestar" approach to assess whether a requested attorneys'-fees award is reasonable. *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000). First, the Court must determine the presumptive lodestar figure by

multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Id*. The lodestar figure is presumptively reasonable, but it may be adjusted based on a weighing of the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; . . . (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975.)

     As shown further below, both the billing rates and amount of time expended by Defendants to defend itself against CAC are reasonable.

## 2.   Defendants' Attorneys' Hourly Billing Rates Are Reasonable

     To determine the appropriate lodestar amount, the court assesses the reasonableness of the hourly billing rate. *See Credit Managers Ass'n of S. Cal. v. Kennesaw Life and Accident. Ins. Co*., 25 F.3d 743, 750 (9th Cir. 1994). In doing so, the court must look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *See Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 979-80 (9th Cir. 2008). Generally, the relevant community is the forum where the district court sits. *Id*. at 979. The lodestar figure is presumptively reasonable. *City of Bulington v. Dague*, 505 U.S. 557, 562 (1992), *see also Lakim Indus*., 2013 WL 1767799 at *8. Courts have recognized that "the field of intellectual property law requires specialized knowledge." *See Yufa v. TSI Incorporated*, Case No. 09–cv–01315–KAW, 2014 WL 4071902, at *5 (N.D. Cal. Aug. 14, 2014). According to the American Intellectual Property Law Association, the average billing rate for IP attorneys (partners) in the Los Angeles area was $561 per hour. *See* Exhibit C, JvLS Decl. ¶25. For associates in the Los Angeles area, the average rate was $412 per hour. *Id*.

20

1    Moreover, the billing rates for each attorney that represented Defendants
2    throughout this litigation were entirely reasonable, especially in light of average rates for
3    intellectual property attorneys based in the Los Angeles area. In 2014, comparable firms
4    in the Los Angeles area charged hourly rates ranging from $298/hour to $765/hr with an
5    average rate of $493/hour. *Id*.  The attorneys primarily responsible for this litigation were
6    John van Loben Sels and Ellen Wang, who (at this point) have 20 years and 14 years
7    respectively experience in litigation, respectively. JvLS Decl., ¶18. Through the course of
8    this case, Mr. van Loben Sels' billing rates ranged from $450-$525/hour and Ms. Wang's
9    billing rates ranged from $350/hour to $450/hour – both well within range of the average
10   rates in the Los Angeles area. JvLS Decl., ¶18.  Included in paragraphs 9 and 11 of the
11   supporting declaration are charts for the Court's reference provides a detailed account of
12   the main litigation team who worked on Westlake over the years, along with their hourly
13   rates and time worked on each matter. JvLS Decl., ¶¶ 9 and 11.  Copies of each of the
14   main team member biographies are also provided as Exhibit G.

15       **3.    Defendants' Amount Of Expended Time To Litigate In District
16            Court And The CBM Proceedings Are Reasonable**

17       To determine the appropriate lodestar amount, the court also assesses "number of
18   hours reasonably expended on the litigation[.]" *See Credit Managers Ass'n of S. Cal. v.*
19   *Kennesaw Life and Accident. Ins. Co*., 25 F.3d 743, 750 (9th Cir. 1994). The cost of
20   patent infringement litigation can run into the millions of dollars. *See, e.g., Takeda Chem.*
21   *v. Mylan*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (affirming award of $16.8 million in
22   attorneys' fees); *ICU Med. v. Alaris Med. Sys*., No. SA CV 04-00689, 2007 WL 6137002,
23   at *5 (C.D. Cal. June 28, 2007), aff'd, 558 F.3d 1368, 1380 (Fed. Cir. 2009) (awarding
24   $4.6 million in attorneys' fees); *Armament Sys. & Procedures v. IQ Hong Kong*, 546 F.
25   Supp. 2d 646, 658 (E.D. Wis. 2008) (awarding $4.2 million).

26       The total amount of hours expended on the district court litigation and CBM
27   proceedings to date in both firms total 5,315.55 hours.  JvLS Decl. ¶23.  CAC's meritless
28   lawsuit forced Defendants to spend a total of $2,308,361.57 to defend itself:

$1,345,623.70 in the District Court, $583,978.29 for CBM-1, and an additional $378,759.58 for CBM-2. JvLS Decl., ¶ 26. According to a recent survey, the litigation cost for cases handled by comparable firms in the Los Angeles area with $1 million to $10 million at risk reached $2.5 million. JvLS Decl., ¶25.

The amount of time and labor that was reasonable. In the district court litigation, CAC accused six separate and distinct products of infringing eleven different claims of the '807 patent which Defendants had to spend a considerable amount of time to research and analyze. JvLS Decl. ¶35. Before the litigation was stayed, preliminary invalidity contentions had to be prepared for all prior art and other non-enablement, best mode, and lack of written description issues. Discovery was undertaken with approximately 53,000 documents produced: DONHAKNEY 00001-00075; WESTLAKE 00001-52207; NOWCOM 00001-1087, 14726-14834. *Id*. Furthermore, significant amount of claim construction work was prepared as briefing for the Markman hearing was about to commence. *Id*.

As the Court is also aware, CAC attempted multiple times to oppose and lift the stay, which Westlake successfully sought and opposed on each occasion. In regards to work in relation to the CBM proceedings (which was only necessary because of the willful infringement allegations, Defendants prepared a further CBM petition based on prior art (35 U.S.C. §§102 and 103, which was not filed because the PTAB instituted CBM-2 on all remaining CAC claims), a first CBM petition with a expert report (which successfully invalidated about half of the patent claims), and a second CBM petition with a expert report (which was instituted with trial set for September 10, 2015). Plaintiffs' claims against defendants so lacked merit that Defendants easily won petitions to institute two CBM proceedings, one of which has already concluded favorably for Defendants. Plaintiffs have made no effort whatsoever to mitigate costs or to graciously accept defeat, further increasing Westlake's attorneys' fees. Given the baseless nature of CAC's infringement lawsuit and the weakness of its overall litigation position, the $2,308,361.57

1  in fees is both equitable and well within the average litigation costs for a case of this

2  magnitude. JvLS Decl. ¶26.

3          **4.   Defendants Should Be Awarded Attorneys' Fees Related to All Work**

4               **to Defeat CAC and Invalidate the Asserted Patent**

5        "[T]he amount of the attorney fees [awarded] depends on the extent to which the

6  case is exceptional." *Special Devices, Inc. v. OEA, Inc*., 269 F.3d 1340, 1344 (Fed. Cir.

7  2001). Defendants may be awarded for fees in preparation of fee motion under 35 U.S.C.

8  §285[8]. *See Miscrostrategy Inc. v. Crystal Decisions, Inc*., 586 F. Supp. 2d 256, 262 (D.

9  Del. 2008) ("Awards under section 285 include 'the fee for the reasonable time expended

10  in preparing the elaborate fee application and briefs filed herein"); *see also Caron v.*

11  *Lifestyle Crafts, LLC*, No. CV-12-00124, 2013 WL 791287, at *3 (D. Ariz. Mar. 4, 2013)

12  (awarding fees for preparation of fee motion under section 285). Work performed by

13  paralegals and litigation support staff is also recoverable under 35 U.S.C. § 285.

14  *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).

15        This Court should award fees for the CBM proceedings because the legal services

16  counsel performed for Defendants during the CBM proceedings are related to this suit as

17  it was necessary for Defendants to prevail in the underlying district court

18  proceeding[9]. JvLS Decl. ¶20.  The Federal Circuit interprets attorney fees to include

19  "those sums that the prevailing party incurs in the preparation for and performance of

20  legal services related to the suit." *Cent. Soya Co. v. Geo A. Homel & Co*., 723 F. 2d 1573,

21  1578 (Fed. Cir. 1983); *see also Mathis v. Spears*, 857 F. 2d 749, 748 (Fed. Cir. 1988).

22        To that end, several courts have awarded fees for PTO proceedings.  *See IA Labs*

23  *CA, LLC v. Nintendo Co.*, No. CIV. PJM 10-833, 2012 WL 1565296, at *4 (D. Md. May

24  1, 2012), *aff'd*, 515 F. App'x 892 (Fed. Cir. 2013) (awarding fees for work done during

---

25  [8] Fish and Tsang's invoices include charges for this motion.  Although this time has been

26  entered into the firm's billing system, an invoice for September 2015 time has not yet been generated for September 2015.  JvLS Decl. ¶22.

27  [9] The Final Hearing in CBM-2 will take place on September 10, 2015 (two days after the

28  filing of this motion).  It is estimated that the additional attorneys' fees and travel costs for the CBM-2 Final Hearing will be approximately $15,000.  JvLS Decl. ¶23.

reexamination proceedings); *Howes v. Med. Components, Inc*., 761 F. Supp. 1193, 1198 (E.D. Pa. 1990) (reexamination proceedings); *Scott Paper Co. v. Moore Bus. Forms, Inc*., 604 F. Supp. 835, 838 (D. Del. 1984) (awarding fees for reissue proceedings); *PPG Indus., Inc. v. Celanese Polymer Specialties Co*., 840 F.2d 1565, 1569 (Fed. Cir. 1988) (the prevailing party was "entitled to reasonable attorney fees based upon the premise that the reissue proceedings substituted for the district court litigation on all issues considered by the PTO and the Board."); *Deep Sky Software, Inc. v. Southwest Airlines Co*., Case No. 3:10-cv-1234 CAB (KSC) (S.D. Cal.)(Order, August, 19, 2015) (court awarded defendant attorney fees for reexamination proceedings as reexamination "was initiated during and in reaction to plaintiff's action").

In cases where courts have declined to award attorney fees for PTO proceedings, it was because the fees were not specified. *See Intellect Wireless, Inc. v. HTC Corp.* No. 09 C 2945, 2015 WL 136142 at *9 (N.D. Ill. Jan. 8, 2015) (court did not allow time for work before the USPTO because the time was not "specifically identified in the brief"). Such is not the case here—a total of $962,737.87 in fees and costs has been spent on both CBM proceedings. JvLS Decl. ¶23.

This Court should take into consideration that Plaintiff's litigation has been nothing short of an improper attempt at settlement extortion. In addition, Plaintiffs repeatedly moved to lift the stay of litigation despite the ongoing CBM proceedings before the USPTO. *See supra* 3(a) and (b). Plaintiffs mounted a fruitless lawsuit, employing money-wasting tactics along the way. Defendants should not be required to bear those costs.

Critically, during the course of this case, the United States Supreme Court handed down its ruling in *Alice*. Plaintiffs' case lacked merit even prior to that decision, but *Alice* made clear that the patents at issue could not possibly be valid under this new 35 U.S.C. § 101 interpretation. JvLS Decl., ¶33. Despite *Alice*, Plaintiffs marched forward toward an inevitable defeat in both CBM proceedings, all the while costing Defendants time and

money, in the amount of $1,165,147.73, since the decision was issued on June 19, 2014. JvLS Decl. ¶33.

Given that the rates charged and the hours expended by Defendants' attorneys were reasonable, the Court should award Defendants the full amount of sought-after fees. Additionally, a court may also adjust the award upward beyond the lodestar amount to take into account special factors. *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

The attorneys' fees, costs, and expenses billed to and paid by Westlake were reasonable and necessary to defend against CAC's unfounded, and ultimately invalid, allegations of patent infringement. The declaration John van Loben Sels is submitted in support of this motion, which includes all invoices associated with this matter as Exhibits A and B. JvLS Decl., ¶¶ 8-11. To date, all bills have been paid.

The billing records attached to the John van Loben Sels' Declaration indicate, on a date-by-date basis, the initials of each legal service provider, a description of the services performed, the amount of time billed, and the dollar amount charged for that entry. *See* Exhibit A and B, JvLS Decl., ¶¶ 8-11. In some cases, courtesy discounts were periodically applied to an invoice, which reduced the bill by a commensurate amount. All time records were kept during the course of the case. *See* Exhibits A and B, JvLS Decl., ¶¶ 8-11.

Similarly, costs incurred for the defense of this matter such as photocopying, postage, travel expenses, expert witness fees, and the considerable filing fees that the PTAB charges in connection with CBM proceedings were necessary and reasonable. *See* Exhibits A and B, JvLS Decl. ¶¶8 and11.

## IV.   CONCLUSION

For the foregoing reasons, Westlake should be granted attorneys' fees under Section 285, in the amount of $2,308,361.57.

DATED:      September 8, 2015          FISH & TSANG LLP

                                       By:  _/s/ John D. van Loben Sels_
                                            JOHN D. VAN LOBEN SELS

                                       Attorneys for Defendants
                                       WESTLAKE SERVICES, LLC D/B/A
                                       WESTLAKE FINANCIAL SERVICES;
                                       NOWCOM CORPORATION; HANKEY
                                       GROUP; AND DON R. HANKEY