KEVIN J. MINNICK (SBN 269620)
kevin.minnick@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone:  (213) 687-5000
Facsimile:   (213) 687-5600

P. ANTHONY SAMMI (<u>pro hac vice</u>)
Anthony.Sammi@skadden.com
JAMES Y. PAK (<u>pro hac vice</u>)
james.pak@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-2307
Facsimile: (917) 777-2307

Attorneys for Plaintiff
CREDIT ACCEPTANCE CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CREDIT ACCEPTANCE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> WESTLAKE SERVICES, LLC D/B/A WESTLAKE FINANCIAL SERVICES, NOWCOM CORPORATION, HANKEY GROUP, and DON R. HANKEY, <br><br> Defendants. | CASE NO.: 13-cv-01523-SJO-MRNx <br><br> **(1)  PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECOVERY OF ATTORNEYS' FEES, COSTS AND EXPENSES; and** <br><br> **(2) DECLARATION OF JAMES Y. PAK.** <br><br> Date:        October 26, 2015 <br> Time:        10:00 a.m. <br> Courtroom: 1 <br> Judge:       Hon. S. James Otero |

1

## <u>TABLE OF CONTENTS</u>

2  PRELIMINARY STATEMENT ........................................................................ 1

3  RELEVANT BACKGROUND ....................................................................... 3

4  ARGUMENT ................................................................................................... 5

5     I.     This Case Is Not Exceptional ................................................... 5

6     II.    Defendants' Theories Fail To Make This Case Exceptional ................. 6

7          A.    Credit Acceptance Was Not Obligated To Concede After
8              *Alice* .............................................................................. 6

9              1.    Defendants Ignore The Presumption Of Validity .............. 7

              2.    Defendants Rely On Improper Attorney Testimony .......... 7

10             3.    Defendants Assert An Absurd Premise ............................. 8

11         B.    CAC's Pre-Suit Investigation Was More Than Adequate .......... 10

12             1.    The Joinder Of Mr. Hankey Was Reasonable And
13                 Justified ......................................................... 10

14             2.    Credit Acceptance's Infringement Positions Were
15                 Supported ........................................................ 14

16         C.    Credit Acceptance Reasonably Conducted This Litigation ......... 15

              1.    Credit Acceptance Reasonably Opposed The Stay ........... 16

17              2.    Credit Acceptance Did Not Abuse The CBM
18                 Process, Nor Is The CBM Process Properly Before
19                 This Court ....................................................... 17

     III.   Even If This Case Were Exceptional, The Requested Fees Are
20         Unjustified ............................................................................ 18

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                                     **PAGE(S)**

*Akamai Technologies Inc. v. Limelight Networks, Inc.*,
   692 F. 3d 1301(Fed Cir. 2013), *reh'g en banc granted, vacated*,
   No. 2009-1372, 2009-1380, 2009-1416, 2009-1417,
   2015 WL 4759378 (Fed. Cir. Aug. 13, 2015)
   (to be published in F. App'x) ........................................................................... 13

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
   Nos. 2009-1372, 2009–1380, 2009–1416, 2009–1417,
   797 F.3d 1020 (Fed. Cir. Aug. 13, 2015) ....................................................... 12

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
   134 S. Ct. 2347 (2014) ........................................................................... *passim*

*Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*,
   709 F.3d 1348 (Fed. Cir. 2013) ...................................................................... 11

*California Institute of Technology v. Hughes Communications, Inc.*,
   59 F. Supp. 3d 974 (C.D. Cal. 2014) ................................................................ 9

*Cambrian Science Corp. v. Cox Communications, Inc.*,
   79 F. Supp. 3d 1111 (C.D. Cal. 2015) ....................................................... 5, 11

*Canon Computer Systems, Inc. v. Nu-Kote International, Inc.*,
   134 F.3d 1085 (Fed. Cir. 1998) ..................................................................... 5, 7

*Finance Express LLC v. NowCom Corp.*,
   No. SACV 07-01225-CJC(ANx) (C.D. Cal. Mar. 6, 2008) ........................... 11

*France Telecom S.A. v. Marvell Semiconductor Inc.*,
   Case No. 12-cv-04967-WHO,
   2015 WL 4396201 (N.D. Cal. July 17, 2015) ................................................ 15

*Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.*,
   790 F.3d 1369 (Fed. Cir. 2015) .................................................................... 5, 6

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................................................ 18

*ICU Medical, Inc. v. Alaris Medical Systems, Inc.*,
   No. SA CV 04-00689 MRP,
   2007 WL 6137003 (C.D. Cal. Apr. 16, 2007) .................................................. 8

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) ....................................................................... 9

*Kreative Power, LLC v. Monoprice, Inc.*,
   Case No. 14-cv-02991-SI,
   2015 WL 1967289 (N.D. Cal. Apr. 30, 2015) ................................................. 6

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
134 S. Ct. 2111 (2014), *reh'g en banc granted, vacated*,
No. 2009-1372, 2009-1380, 2009-1416, 2009-1417,
2015 WL 4759378 (Fed. Cir. Aug. 13, 2015)
(to be published in F. App'x) ............................................................. 13

*MarcTec, LLC v. Johnson & Johnson*,
664 F.3d 907 (Fed. Cir. 2012) ........................................................... 18

*Modine Manufacturing Co. v. Allen Group, Inc.*,
917 F.2d 538 (Fed. Cir. 1990) ........................................................... 18

*NXP B.V. v. Blackberry, Ltd.*,
58 F. Supp. 3d 1313 (M.D. Fla. 2014) ....................................... 15, 18

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014) ...........................................................*passim*

*Phoenix Modular Elevator, Inc. v. T.L. Shield & Assocs., et al.*,
N. 2:14-cv-339-RGK-PLA, ECF No. 116, (C.D. Ca. Dec. 16, 2014) ............ 15

*Rodriguez v. County of Los Angeles*,
Case No. 10-6342-CBM (AJWx),
2014 WL 8390755 (C.D. Cal. Dec. 29, 2014) .................................. 8

*SFA Systems, LLC v. Newegg Inc.*,
793 F.3d 1344 (Fed. Cir. 2015) ........................................................... 6

*Vasudevan Software, Inc. v. Microstrategy, Inc.*,
Case No. 11-cv-06637-RS,
2015 WL 4940635 (N.D. Cal. Aug. 19, 2015)................................. 15

*Westlake Services, LLC v. Credit Acceptance Corp.*,
CBM2014-00008, Paper No. 36 (P.T.A.B. Apr. 29, 2014) ............................ 17

**STATUTES**

35 U.S.C. § 271(a) ............................................................................. 11

35 U.S.C. § 285.......................................................................*passim*

**RULES**

Fed. R. Civ. P.  11 ..............................................................2, 3, 12, 13

Fed. R. Civ. P. 56(c)(4)...................................................................... 8

C.D. Cal. Local Rule 7-7 .................................................................. 8

**REGULATIONS**

37 C.F.R. § 42.12............................................................................. 17

1

**OTHER AUTHORITIES**

2

Abraham Kasdan, *Can You Patent Software And Business Methods In The U.S.? How Did We Get Here And Where Do We Now Stand?*,
24 Fed. Circuit B.J. 649 (2015) ........................................................................ 9

3

4

Lidiya Mishchenko, *Alice: Through The Formalist Looking-Glass*,
97 J. Pat. & Trademark Office Soc'y 214 (2015) ............................................ 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY STATEMENT**

Defendants' request for attorneys' fees and costs (the "Fee Motion"), despite its 25 pages of breathless accusations and *ad hominem* attacks, fails to show that this is an "exceptional" case warranting an attorneys' fees award under 35 U.S.C. § 285. The Supreme Court instructs that an exceptional case is one that "stands out from others." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). The only thing that "stands out" in this run-of-the-mill infringement litigation are Defendants' own actions and rhetoric.

In the usual way, the owner of a duly issued and presumptively valid patent, Plaintiff Credit Acceptance Corporation ("Credit Acceptance"), alleged infringement against a group of related Defendants whose products closely resemble the patented system. Defendants elected to reexamine the patent's validity rather than litigate their infringement; for efficiency's sake, the Court stayed the case in the interim. As the stay entered its nineteenth month, Credit Acceptance made a business decision to drop the suit, provided a covenant not to sue, and even offered to settle. Apart from the length of the stay (occasioned by Defendants' serial patent review proceedings, not by Plaintiff), nothing differentiates these proceedings from countless others.

Rather than settle or just walk away with a judgment in their favor, Defendants have behaved as "sore winners," going so far as to oppose the voluntary dismissal. Now, they ask this Court to make an exception to the American Rule by rebranding this vanilla patent dispute "exceptional." Defendants have failed to show, however, that Credit Acceptance put forth objectively baseless claims, acted in subjective bad faith, or otherwise acted unreasonably. A close look reveals that it is *Defendants* who act with an improper purpose by seeking to exploit an intervening change in law to grab fees to which they are not entitled.

In 2014, the Supreme Court decided *Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 134 S. Ct. 2347 (2014). Courts and commentators call the decision opaque and note continued uncertainty at the USPTO and in the lower courts about the validity of

1

business method patents.  Defendants argue, however, that the decision so seriously altered patent law that this case is exceptional under § 285 simply because Credit Acceptance did not dismiss its complaint fast enough.  Yet numerous claims in the patent-in-suit remain presumptively valid and enforceable, and even if *Alice* undermines the patent-in-suit, the law is clear that mere invalidity is not a basis for fees under § 285.  Moreover, the premise under Defendants' argument is absurd: that business method patent owners should forfeit their rights or face fee liability whenever there is uncertainty on how courts will interpret law.  Given the significant uncertainty *Alice* has caused, Defendants' argument is particularly unfair here.

Defendants also attack Credit Acceptance's pre-suit investigation, seeking to relitigate defective and ill-considered Rule 11 motions, which they withdrew on this Court's urging.  The crux of their renewed attack—that Defendant Don Hankey was improperly joined—is belied by Mr. Hankey's own statements on the Hankey Group's website, where he takes credit for directing Defendants' technology programs, just as this Court found in 2013.

Finally, Defendants attack Credit Acceptance for resisting the stay and purported "abuse" before the Patent Trial and Appeal Board ("PTAB").  The Court's several orders regarding the stay reveal that Credit Acceptance put forth good faith arguments on close questions.  Credit Acceptance has litigated reasonably before the PTAB, just as it has in this Court.  Indeed, the PTAB is empowered to sanction misconduct in proceedings before it but has not done so in either CBM proceeding.

Defendants did not "defeat" every aspect of the complaint, contrary to their assertion (Fee Mot. n.1), and are nowhere close to proving this case exceptional. Even if they could, their fees are unjustified.  Defendants seek tens of thousands of dollars on discovery and claim construction *while this case was stayed, despite Defendants' representation that such costs would be avoided.*  The invoices also double-count time, include entries for other cases for other clients, and ultimately fail to add up.  Credit Acceptance respectfully requests denial of the Fee Motion.

**RELEVANT BACKGROUND**

On March 4, 2013, Credit Acceptance sued Defendants for infringement of U.S. Patent No. 6,950,807 (the "'807 Patent"). The '807 Patent describes a process for providing automotive financing. (ECF No. 1, Ex. 1.) Credit Acceptance alleged that Defendants together offered several infringing products. (*Id.* ¶¶ 18-23.) The Complaint identified Nowcom and Westlake as "sister companies within the Hankey Group" and alleged that Mr. Hankey is the "moving force behind the design, development, manufacture, and/or use of the accused products by Defendants Hankey Group, Westlake, and Nowcom." (*Id.* ¶¶ 9, 10.) Indeed, the Hankey Group's website confirms that Mr. Hankey takes personal credit for the technology programs at each Defendant company. (Declaration of James Y. Pak ("Pak Decl.") Ex. 1 ("With the advent of the Internet, Mr. Hankey has swiftly incorporated technology into every aspect of the Hankey Group of companies.").)

Despite these statements, Defendants moved for Rule 11 sanctions, asserting there was no reasonable basis for suing Mr. Hankey. (ECF No. 31.) The motion failed to give proper notice and was struck *sua sponte* with a comment discouraging Defendants from refiling. (ECF No. 34.) Defendants refiled anyway, but the Court urged them to reconsider given Rule 11's liberal standard and the Hankey Group website. (ECF Nos. 35, 44 at 29.) Defendants withdrew. (ECF No. 48.)

Defendants answered and counterclaimed, and the parties conducted seven months of pretrial litigation, including significant discovery and the exchange of infringement contentions, invalidity contentions, and claim construction material. (ECF No. 67 at 6.) At no point during this time did Defendants inform Credit Acceptance or this Court that they would initiate separate proceedings with the PTAB and seek a stay of this case. On October 11, 2013, Defendants filed their first covered business method petition with the PTAB ("CBM-1"), and moved to stay this case on November 15, 2013. (ECF No. 58.) The Court granted the stay over Credit Acceptance's opposition, reasoning that the law on patentability was in flux, but "the

possibility of guidance lies on the horizon.  The Supreme Court granted certiorari to review the Federal Circuit's decision in [*Alice*]. … Knowing the proper test to apply will simplify the required legal analysis of this issue."  (ECF No. 67 at 5.)

The PTAB instituted review of some claims of the '807 Patent, but not all.  Credit Acceptance moved to lift the stay and proceed on the remaining claims.  (ECF No. 70.)   The Court denied the motion in reliance on Defendants' promise to move the PTAB for reconsideration on the remaining claims (ECF No. 80).  When the PTAB denied reconsideration, Credit Acceptance again moved to lift the stay.  (ECF No. 82.)  The Court denied that request in reliance on Defendants' promise to file a second CBM petition ("CBM-2") in light of *Alice*.  (ECF No. 88 at 5.)  Defendants ultimately did so, but only after this Court issued an order to show cause because Defendants had failed to file by their self-imposed deadline.  (ECF No. 91.)

In CBM-1, the PTAB found claims 1-9, 13, and 34-42 were directed to unpatentable subject matter.  The PTAB has not issued a final decision on CBM-2 for the remaining claims.  Thus, claims 10-12 and 14-33 remain presumptively valid.

On June 23, 2015, Credit Acceptance proffered a covenant not to sue and moved to voluntarily dismiss its claims with prejudice and to dismiss the pending counterclaims for lack of subject matter jurisdiction.  (ECF No. 99, Ex. 1.)  Credit Acceptance also attempted to engage in settlement discussions to no avail.  (*See, e.g.*, Pak Decl. Ex. 2 at 3.)  Remarkably, Defendants not only opposed dismissal, but filed an *ex parte* application to enforce the stay (ECF No. 100), as well as a motion for leave to amend their answer to belatedly add counterclaims (ECF No. 104).  The Court denied the *ex parte* application, denied the motion for leave to amend, and dismissed this case on August 24, 2015. (ECF No. 109.)  Defendants filed their Fee Motion on September 8, 2015 at 8:20 p.m. (a day late under this Court's rules[1]).

---

[1] The Court can deny the Fee Motion without reaching its merits because it was untimely.  The motion was filed at 8:20 p.m. on September 8.  Under the Court's Standing Order, it is deemed filed the next court day – one day late.

# ARGUMENT

## I.      This Case Is Not Exceptional

A prevailing party may recover attorneys' fees only in "exceptional cases."  35 U.S.C. § 285.   An exceptional case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane*, 134 S. Ct. at 1756.  The moving party has the burden to show the case is exceptional by a preponderance of the evidence.  *Id*. at 1758.

"[A]s the Supreme Court made clear in *Octane*, fee awards are not to be used 'as a penalty for failure to win a patent infringement suit.'"  *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (rejecting "fact that Gaymar lost at the PTO" as basis for fee shifting).  "In other words, fees are not awarded solely because one party's position did not prevail."  *Id.*  Were it otherwise, application of § 285 "would have negative implications for access to justice."  *Cambrian Sci. Corp. v. Cox Commc'ns., Inc.*, 79 F. Supp. 3d 1111, 1114-15 (C.D. Cal. 2015).

Under § 285, the Court should consider "both the governing law and the facts of the case."  *Octane*, 134 S. Ct. at 1756.  In that regard, the Federal Circuit has determined that "a patent is presumed valid, and this presumption exists at *every* stage of the litigation."  *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998) (emphasis added).  "Thus, where the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue."  *Id.*

The core characteristics of this litigation establish that it is ordinary, not exceptional.   Credit Acceptance asserted infringement of a duly issued and presumptively valid patent against Defendants whose products resemble the patented invention.  Defendants counterclaimed, but *never alleged inequitable conduct* (ECF No. 109 at 5-6), nor did Defendants permit the parties to litigate infringement to test

1  Credit Acceptance's allegations; they elected to litigate validity instead.  Moreover,
2  the remaining claims in the '807 Patent are presumed valid today, and the case would
3  not be rendered exceptional even if the PTAB invalidates those remaining claims in
4  CBM-2.  *Gaymar*, 790 F.3d at 1373 (rejecting "the fact that Gaymar lost at the PTO"
5  as a basis for fee shifting).  Indeed, Defendants cite no case holding that a finding of
6  invalidity alone is grounds to make a case exceptional.  If that were the law, all
7  invalidated patents would yield fees.  This run-of-the-mill case does not stand out.

8  **II.   Defendants' Theories Fail To Make This Case Exceptional**

9       The Fee Motion largely ignores the core characteristics discussed above.
10 Instead, Defendants assert three grounds for their fee request: that Credit Acceptance
11 should have forfeited all litigation upon the Supreme Court's decision in *Alice*; that
12 Credit Acceptance's pre-suit investigation was deficient; and that Credit
13 Acceptance's conduct in one aspect of this litigation and its conduct before the
14 PTAB was unreasonable.  Each assertion is baseless, inaccurate, or misplaced in this
15 posture.  Defendants have not proved this case "exceptional" under § 285.

16      **A.   Credit Acceptance Was Not Obligated To Concede After *Alice***

17      "In *Octane Fitness*, the Supreme Court made clear that it is the 'substantive
18 *strength* of the party's litigating position' that is relevant to an exceptional case
19 determination, not the *correctness* or eventual success of that position. … A party's
20 position on issues of law ultimately need not be correct for them to not 'stand[ ] out,'
21 or be found reasonable."  *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed.
22 Cir. 2015) (quoting *Octane*, 134 S. Ct. at 1756).  After *Octane*, courts continue to
23 analyze fee requests under § 285 by assessing whether the non-moving party's
24 "position was objectively unreasonable or baseless."  *Kreative Power, LLC v.
25 Monoprice, Inc.*, 2015 WL 1967289, at *6 (N.D. Cal. Apr. 30, 2015).

26      Defendants assert that *Alice* changed the law so dramatically that merely
27 maintaining this litigation after that decision renders this case exceptional.  This
28 assertion fails.  At the threshold, Credit Acceptance must point out the fundamental

6

1   inconsistency in Defendants' positions.  Defendants seem to fault Credit Acceptance
2   for not dropping this suit and forfeiting all proceedings as soon as *Alice* came down.
3   (Fee Mot. 11-14.)  But this case was stayed when *Alice* was decided, and Defendants
4   *opposed* Credit Acceptance's later motion to voluntarily dismiss.  (ECF No. 103.)
5   Defendants even moved *ex parte* to enforce the stay in order to prevent the Court
6   from ruling on the motion to dismiss, taking the position that Credit Acceptance
7   *could not* dismiss this case while it was stayed.  (ECF No. 100.)  Defendants cannot
8   have it both ways; if they claim Credit Acceptance cannot dismiss stayed litigation,
9   then they cannot fault Credit Acceptance for not sooner dismissing stayed litigation.

10      To the extent the Court reaches the merits of Defendants' inconsistent
11  argument, it should be rejected.  Defendants fundamentally ignore the presumption
12  of validity to which the '807 Patent is entitled; they support their argument with only
13  a legal conclusion asserted in the sworn declaration of their attorney, and in any
14  event the argument is based on an absurd premise.

15              ### 1.    Defendants Ignore The Presumption Of Validity

16      As explained above, "a patent is presumed valid, and this presumption exists
17  at every stage of the litigation."  *Canon*, 134 F.3d at 1088.  Because the remaining
18  claims in the '807 Patent are presumed valid, Defendants must do more than cite
19  *Alice* to demonstrate that maintaining this litigation post-*Alice* renders the case
20  exceptional.   Otherwise, § 285 would significantly undermine the well-settled
21  presumption of validity.  Defendants' discussion of the PTAB's decision to institute
22  review in CBM-2 (Fee Mot. 13:13-14:11) is therefore irrelevant; the remaining
23  claims in the patent are presumed valid until the PTAB holds them unpatentable.  In
24  light of the presumption of validity, *Alice* does not render this case exceptional.

25              ### 2.    Defendants Rely On Improper Attorney Testimony

26      In place of any argument to establish that *Alice* actually renders Credit
27  Acceptance's legal positions unreasonable or objectively baseless, Defendants offer
28  a legal conclusion supported by their attorney's declaration. (Fee Mot. 12:2-4.)  This

1  is improper.   Under Local Rule 7-7, "[d]eclarations shall contain *only factual,*
2  *evidentiary matter* and shall conform as far as possible to the requirements of
3  F.R.Civ.P. 56(c)(4)."  C.D. Cal. R. 7-7 (emphasis added).

4         Here, Defendants cite the declaration of their counsel, who states under
5  penalty of perjury that "[f]ollowing the dramatic and fundamental change in law in
6  *Alice* and *Ultramercial*, no reasonable litigant would have still pursued CAC's
7  infringement claims or continued to defend the CBM petitions pending before the
8  PTAB, yet Plaintiff continued to do so."  (van Loben Sels Decl. ¶ 33, ECF No. 112-
9  1.)   The declaration offers a bare legal conclusion, and should be disregarded.
10 *Rodriguez v. Cty. of L.A.*, No. 10-6342-CBM, 2014 WL 8390755, at *13 (C.D. Cal.
11 Dec. 29, 2014) (striking attorney declarations containing "legal opinions" because
12 they "violate this Court's Local Rules 7–7 and 11–6 and are unnecessary and
13 unhelpful.").  Because the declaration is Defendants' only *evidence* that this case was
14 rendered objectively unreasonable by *Alice*, Defendants' fee request fails with it.[2]

15                **3.    Defendants Assert An Absurd Premise**

16        According to Defendants, it was Credit Acceptance's duty to "abandon the
17 case" as soon as *Alice* was decided.  (Fee Mot. 12:6-8.)  This argument is based on
18 an absurd premise—that owners of business method patents in active litigation must
19 drop all infringement claims and even forfeit their patents, or face the risk of § 285
20 fees.  In light of the extreme volatility that *Alice* injected into patent law during the
21 pendency of this case, the Court should reject Defendants' argument.

22        Commentators and courts have recognized the uncertainty *Alice* has caused as
23 _____

24 [2] Defendants' reference to *ICU Medical, Inc. v. Alaris Med. Sys.*, 2007 WL 6137003
   (C.D. Cal. Apr. 16, 2007), does not save their argument.  (Fee Mot. 12:9-12).  That
25 case did not involve an intervening change in law, and was found exceptional
   because plaintiff pursued injunctive relief with "flaws that even a cursory review of
26 the asserted patent's prosecution history would have revealed," and "compounded
   this egregious 'oversight' by failing to acknowledge or correct these claims'
27 deficiencies or to withdraw them in an expeditious manner."   *ICU*, 2007 WL
   6137003, at *5-6.  In contrast, the allegedly unreasonable position here was a mere
28 failure to immediately drop a claim after a change in law.

1  regards the continuing viability of business method patents, particularly those
2  involving software.  Judge Pfaelzer recently observed "the difficulty of interpreting
3  and applying § 101 to software inventions. Given the opacity of *Alice*, it is
4  unsurprising that courts have struggled to define the boundaries of software
5  patentability." *Cal. Inst. of Tech. v. Hughes Commc'ns. Inc.*, 59 F. Supp. 3d 974, 990
6  (C.D. Cal. 2014).  Another commentator has written that "*Alice* has left the law very
7  unsettled. Although it articulated a two-part test, it unfortunately provided no further
8  guidance on how to determine when a claim covers an 'abstract idea' in the first
9  instance, or when a claim to an abstract idea includes a sufficient inventive concept
10  to make it patent eligible, leaving it to the lower courts to wrestle with these issues."[3]

11       The post-*Alice* landscape is by no means settled, as litigation is ongoing across
12  the country.  *See* Lidiya Mishchenko, *Alice: Through The Formalist Looking-Glass*,
13  97 J. Pat. & Trademark Office Soc'y 214, 221 (2015) ("The perceived uncertainty at
14  the USPTO and the lower courts is not surprising given the lack of clear definitions
15  or guidelines provided by the Supreme Court…").  Defendants' own authority
16  underlines this point.  *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d
17  1343, 1345 (Fed. Cir. 2015) (noting "precision has been elusive in defining an all-
18  purpose boundary between the abstract and the concrete, leaving innovators and
19  competitors uncertain as to their legal rights.").

20       Defendants offer three other cases finding claims unpatentable post-*Alice*.
21  (Fee Mot. 11-12 n.7.)  But the earliest PTAB decision Defendants cite is dated May
22  18, 2015, over a year after *Alice* was decided.  In fact, **two of the cases Defendants**
23  **cite were decided on or after the date Credit Acceptance moved to dismiss this case**.
24  (*Id.* (citing decisions of June 23, 2015 and July 9, 2015); *see* ECF No. 99 (moving to

---

[3] Abraham Kasdan, *Can You Patent Software And Business Methods In The U.S.?*
*How Did We Get Here And Where Do We Now Stand?*, 24 Fed. Circuit B.J. 649,
672-73 (2015); *see also id.* at 672-73 (noting *Alice* "has raised more questions than it
has answered.  More definitive guidance from the Federal Circuit, and possibly yet
again from the Supreme Court, is sorely needed…").

1   dismiss on June 23, 2015).)   Thus, Defendants' own cases indicate that these

2   tribunals were still digesting *Alice* even while this case was being dismissed, hardly a

3   circumstance that renders the mere maintenance of a stayed case "exceptional."[4]

4          In the end, Defendants are behaving like "sore winners."   Unsatisfied with a

5   dismissal on the merits, they have opportunistically seized on a change in law to seek

6   fees they are not entitled to.   Their argument, if credited, would require Credit

7   Acceptance and similarly situated patent owners across the country to construe *Alice*

8   against their own interests and relinquish their rights to validly issued patents lest

9   their adversaries recover fees for litigation that was reasonable when instituted.   To

10  describe the argument is to undermine it.   The Court should deny the Fee Motion.

11          **B.    CAC's Pre-Suit Investigation Was More Than Adequate**

12          Defendants assert that Credit Acceptance's pre-suit investigation must have

13  been deficient for two failing reasons: that it was improper to join Mr. Hankey as a

14  party and that Credit Acceptance's infringement theory was somehow unsupportable.

15          **1.    The Joinder Of Mr. Hankey Was Reasonable And Justified**

16          As a threshold matter, Defendants have not established that the alleged

17  misjoinder of a party is a basis for finding a case exceptional.   Even assuming that it

18  could, Westlake has not shown that joining Mr. Hankey was unreasonable or resulted

19  from an inadequate pre-suit investigation for at least five reasons.

20          First, Westlake presents no evidence about Credit Acceptance's pre-suit

21  investigation; rather, Westlake's theory is based on surmise, *i.e.*, Westlake claims

22  Mr. Hankey was uninvolved with any alleged infringement and therefore Credit

23  Acceptance's decision to name him in the lawsuit must have been unreasonable.

24  That *ipse dixit* is supported by no evidence.

25          Second, joining Mr. Hankey was reasonable and supported by Credit

---

[4] Defendants' allegation that Credit Acceptance has prolonged this case to collect royalties from a settlement licensee is irrelevant.  Mutual resolution of a single other case involving the '807 Patent hardly suggests a pattern of abuse.

Acceptance's pre-suit investigation "considering both the governing law and the facts of the case." *Cambrian*, 79 F. Supp. 3d at 1113-14.  For Credit Acceptance to "establish liability for direct infringement of a claimed method or process under 35 U.S.C. § 271(a)" it had to "prove that each and every step of the method or process was performed." *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013).  Here, it was possible that neither Westlake nor Nowcom performed *all* the steps reflected in the '807 Patent's method claims.  For instance, Westlake may have supplied the financing packages, while Nowcom provided the system components.  (*See generally* ECF No. 112-9, Ex. F.)

However, Credit Acceptance's investigation uncovered that both companies hold themselves out as part of the Hankey Group.  (Pak Decl. Exs. 3-5.)  Likewise, Mr. Hankey holds himself out as the Hankey Group's founder and chairman.  (*See, e.g.*, Pak Decl. Ex. 1;  Ex. 6 ("Hankey Group, … is comprised of seven operating companies with 2,100 employees. Don Hankey founded six of the companies and purchased the seventh in 1988."); Ex. 7 at 3; Ex. 8 at 23.)  Most importantly, Mr. Hankey **directly and personally takes credit for implementing Westlake's and Nowcom's technology policies**.  (Pak Decl. Ex. 1 ("With the advent of the Internet, Mr. Hankey has swiftly incorporated technology into every aspect of the Hankey Group of companies."); *id*. Ex. 8 at 24 ("Hankey's success has come largely from the fact that he's been able to pair his businesses together in symbiotic relationships.").)

The Hankey Group's website was not the only source connecting Mr. Hankey to the other Defendants.  Judge Carney also denied a motion to dismiss filed by Mr. Hankey and the Hankey Group in 2008 trademark suit against them, crediting allegations that "the alleged infringement, cybersquatting and false advertising were committed under the direction, with the approval and for the benefit of Don Hankey and the companies comprising Hankey Group." *Finance Express LLC v. NowCom Corp.*, No. SACV 07-01225-CJC(ANx), ECF No. 34 at 5 (C.D. Cal. 2008).  Having uncovered this information, Credit Acceptance developed a good faith basis that Mr.

11

1  Hankey, through Hankey Group, is or was the mastermind of the allegedly infringing

2  activity, even if neither Westlake nor NowCom alone performed all required steps.

3  *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, No. 2009-1372, 797 F.3d 1020,

4  1022-1023 (Fed. Cir. 2015) (*en banc*) (recognizing vicarious infringement).

5       <u>Third</u>, this Court has already observed at the scheduling conference in 2013

6  that, for purposes of Rule 11, there appeared to be sufficient evidence to support

7  joining Mr. Hankey.  Prior to the conference, Defendants had filed a procedurally

8  defective motion for sanctions asserting that Credit Acceptance's Complaint violated

9  Rule 11 by naming Mr. Hankey and the Hankey Group.  (ECF No. 31.)  In its order

10  striking the sanctions motion *sua sponte*, the Court observed:

11       Although Defendant has the right to refile this motion, the
       court notes that attorney sanctions under Federal Rule of
12       Civil Procedure 11 ("Rule 11") are an extreme remedy and
       violations of Rule 11 are difficult to establish. In the
13       absence of a compelling demonstration by Defendants that
       Plaintiff has truly taken some action without any possible
14       meritorious basis for that action, the Court urges that
       Defendants consider the merits of this motion before
15       refiling it in accordance with Local Rule 6-1.

16  (ECF No. 34.)  Undaunted, Defendants refiled the Rule 11 Motion.  At the Rule 26(f)

17  conference, the Court again urged Defendants to reconsider the motion in light of

18  what the Hankey Group's website says about Mr. Hankey:

19       THE COURT: Well, I'm looking at the website. … It
       identifies Mr. Don Hankey as the chairman of that group,
20       and it lists sister companies.  …

21       I'm looking at Rule 11, and I'm looking at the website, and
       there seems to be some evidentiary support.
22

23  (ECF No. 44 at 7:1-8; 13:8-9.)  Nothing has changed while this case has been stayed

24  to alter the Court's initial and correct interpretation of the evidence.

25       Defendants mischaracterize this record by asserting that "[t]he Court urged

26  counsel for the parties to discuss the dismissal of Mr. Hankey as a defendant as there

27  appeared to be few facts, if any, warranting his inclusion as a defendant in the case."

28  (Fee Mot. 7:15-17.)  Tellingly, Defendants cite *their own notice withdrawing the*

1    *Rule 11 motion as the only support for this claim.* (*Id.* (citing ECF No. 48 at 2).) As

2    the above makes clear, the Court never stated or suggested that few facts, if any,

3    supported impleading Mr. Hankey. Defendants have misstated the record, which

4    reasonably supports suing Mr. Hankey.[5]

5         Fourth, the prevailing law when Credit Acceptance filed suit further bolstered

6    Credit Acceptance's factual investigation. Indeed, the decision to name Mr. Hankey

7    was particularly reasonable in light of the then-applicable law. In 2012, the Federal

8    Circuit held *en banc* that a party can be liable for inducing infringement even if there

9    is no single entity that performs all of the elements of a claim. *See Akamai Techs.*

10   *Inc. v. Limelight Networks, Inc.*, 692 F. 3d 1301, 1306 (Fed Cir. 2012) (*en banc*)

11   ("To be clear, we hold that all the steps of a claimed method must be performed in

12   order to find induced infringement, but that it is not necessary to prove that all the

13   steps were committed by a single entity.").[6] Under that law, Mr. Hankey could be

14   liable as the chair of the Hankey Group for inducing Westlake and Nowcom to each

15   perform part of the patent even if neither entity performed all the elements.[7]

16        Finally, the argument that Credit Acceptance should have dropped Mr.

17   Hankey after he produced five documents is wrong. (Fee Mot. 8:7-23.) Mr.

18   Hankey's paltry production does not exonerate him from infringement liability.

19   Even supposing the documents tended to support his non-involvement, Defendants'

20   argument fails to account for their unilateral decision to stay this case before

21   _____

22   [5] Defendants also misrepresent that Mr. Hankey was "forced" to "defend this action

23   before … the United States Patent Trial Appeal Board 'PTAB'" for "over two years." (Fee Mot. 1:18-21.) Mr. Hankey is not a participant in *any* of the PTAB

24   proceedings (Pak Decl. ¶¶ 13-14), and no one has been "forced" to litigate in the PTAB. Defendant Westlake Services, LLC filed there voluntarily and unilaterally.

25   [6] *Akamai* (2012) was overturned by the Supreme Court in 2014 while the case was

26   stayed. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014).

27   [7] Defendants do not address *Akamai* (2012), but rely on cases from 1996 and 2004.

28   (Fee Mot. 6:13-7:7.) That reliance is misplaced because *Akamai* (2012) clarified the standard for divided infringement in 2012.

13

1  discovery completed.  Mr. Hankey purportedly finished his production on September

2  20, 2013 (Fee Mot. 8:14), less than a month before Defendants filed CBM-1 and just

3  five weeks before informing Credit Acceptance that they would seek a stay.  (ECF

4  No. 58 at 1 (identifying November 1, 2013 as meet and confer date for motion to

5  stay).)   Because Defendants left Credit Acceptance insufficient time to complete

6  discovery, they should not be heard to complain that he remained in the case.

7       By the same token, Defendants' repeated suggestion that Credit Acceptance

8  "did not diligently pursue an investigation" by not deposing Mr. Hankey is also

9  wrong.   When Defendants moved to stay, *all* the parties were deep into claim

10 construction discovery.  Credit Acceptance had sought and obtained over 67,000

11 pages of documents and had scheduled the deposition of Defendants' expert.  (ECF

12 No. 59 at 4-5.)   Thus, discovery in this case—including the deposition of Mr.

13 Hankey—was curtailed by Defendants' stay motion, not any lack of diligence.

14             **2.    Credit Acceptance's Infringement Positions Were Supported**

15      Credit Acceptance's infringement claims were not objectively baseless,

16 contrary to Defendants' assertion.  (ECF No. 112 at 9.)  As an initial matter,

17 Defendants' testimonial evidence (ECF No. 112-2) is new and Credit Acceptance

18 has not had an opportunity to cross-examine the declarant.   In fact, Credit

19 Acceptance never had an opportunity to fully review Defendants' internal systems

20 documentation because Defendants stayed discovery.

21      In any event, Credit Acceptance provided ample support for its infringement

22 positions.  Defendants assert that Credit Acceptance's contentions were "objectively

23 baseless" because, according to Defendants, "none of the screen shots [provided in

24 Plaintiff's Preliminary Infringement Claim Chart] . . .  show that a 'dealer cost' is

25 taken into consideration." (Fee Mot. 10:21-23.)  Absent evidence to the contrary, the

26 notion that a dealer's costs would be considered when structuring a deal should not

27 strike anyone as objectively baseless.  Moreover, Credit Acceptance cited evidence

28 showing the accused systems refer to "Cost," "Vehicle Costs," and "Vehicle Cost,"

1   which suggest dealer costs are considered.  (ECF No. 112-9, Ex. F, at 19, 21, 28.)

2   Defendants also argue that Credit Acceptance's infringement contentions for

3   Claims 7 and 8, which "require the pooling of collateral," were objectively baseless

4   because "[n]one of the Accused Instrumentalities utilize a collateral pool."   (Fee

5   Mot. 11:5, 18.)  In fact, Credit Acceptance provided at least two separate screenshots

6   suggesting that Defendants' products utilize "portfolio pools"—specifically, one

7   screenshot advertises "Portfolio pools from $250,000 and up," and a second says

8   "Portfolio pools from $50,000 and up." (ECF No. 112-9, Ex. F, at 52, 54.)

9   Importantly, there have been no findings of fact in this case as to whether the

10  accused products are infringing.  Defendants' attempt to ambush Credit Acceptance

11  with newly drafted testimony in their favor is neither persuasive nor proper at this

12  late stage.  Credit Acceptance had and still has a reasonable basis to believe the

13  accused systems infringe, and Defendants point to no publicly available information

14  to the contrary.  *Cf. Phoenix Modular Elevator, Inc. v. T.L. Shield & Assocs., et al.*,

15  No. 2:14-cv-339, ECF No. 116 at 2 (C.D. Cal. Dec. 16, 2014) (misjudging extent of

16  infringement "does not constitute frivolous or baseless conduct.").

17  **C.**   **Credit Acceptance Reasonably Conducted This Litigation**

18  After *Octane*, courts continue to find that "good faith zealous advocacy [is]

19  not exceptional."  *France Telecom S.A. v. Marvell Semiconductor Inc.*, 2015 WL

20  4396201, at *3-4 (N.D. Cal. July 17, 2015).  Thus, fees are routinely denied where a

21  party's conduct "may reasonably be interpreted as part of [its] good-faith effort to

22  advance its position in the face of [the adversary's] vigorous and equally fervent

23  defense." *Vasudevan Software, Inc. v. Microstrategy, Inc.*, 2015 WL 4940635, at *6

24  (N.D. Cal. Aug. 19, 2015).   Courts also deny fees where a plaintiff neither

25  "impede[d] the progress of the case, nor … misused the court system for business

26  advantage or engaged in any gamesmanship or misconduct."  *NXP B.V. v.*

27  *Blackberry, Ltd.*, 58 F. Supp. 3d 1313, 1325 (M.D. Fla. 2014).  Here, Defendants

28  accuse Credit Acceptance of unreasonably resisting a stay of this case and "abusive"

15

1   conduct in litigating the CBM petitions.  Neither theory withstands scrutiny.

2   ## 1.      Credit Acceptance Reasonably Opposed The Stay

3   Credit Acceptance's opposition to the stay was reasonable and not abusive.

4   Contrary to Defendants' assertions, a stay is not "automatic" (Fee Mot. 3:14), and

5   the orders instituting and maintaining the stay show that Credit Acceptance advanced

6   appropriate arguments on close questions, even if it was ultimately unsuccessful.

7   In instituting the stay, the Court found one of the four factors—the progress

8   made in discovery—weighed *against* a stay.  (ECF No. 67 at 6.)  A second factor—

9   prejudice to the plaintiff—weighed only "modestly in favor of a stay." (*Id.* at 7.)  In

10   other words, Credit Acceptance nearly prevailed on half the factors, a notable

11   outcome given that the relevant statute sought to "ease the movant's task of

12   demonstrating the need for a stay." (*Id.* at 3.)  Nevertheless, the Court instituted a

13   stay because *Alice* may assist the PTAB in ruling on CBM-1. (*Id.* at 5.)

14   After the PTAB instituted review for only some of the claims of the '807

15   Patent, Credit Acceptance moved to lift the stay and proceed *only* on claims not

16   under review.  (ECF No. 70.)  The Court denied the motion on condition that

17   Defendants seek reconsideration from the PTAB after *Alice* issued, but nothing about

18   the Court's order suggested the motion was improper; to the contrary, the Court

19   agreed with Credit Acceptance that the PTAB might not agree to review the

20   remaining claims after all.  (ECF No. 80.)

21   The PTAB eventually denied Defendants' request for reconsideration,[8] so

22   Credit Acceptance asked this Court to reconsider its decision to maintain the stay.

23   (ECF No. 82.)  After Defendants promised to file CBM-2, the Court denied Credit

24   Acceptance's motion for reconsideration, but noted that this was a close call:

25   _____

26   [8] Defendants' suggestion that Credit Acceptance multiplied these proceedings by
opposing their reconsideration request is misplaced.  The PTAB denied the motion
for reconsideration because Defendants had failed to carry their burden.  *Westlake*
27   *Services, LLC v. Credit Acceptance Corp.*, CBM2014-00008, Paper No. 36 at 7
(P.T.A.B. Apr. 29, 2014).  That is not Credit Acceptance's fault.

28

"Generally, the Court would discourage a defendant from filing serial CBM petitions.  However, there are unique circumstances here," *i.e.*, the *Alice* decision. (ECF No. 88 at 5.)  When Defendants failed to timely file a second CBM petition, the Court issued an order to show cause confirming that "the Court took the *unusual step* of agreeing to wait up to 6 months for another CBM petition to be decided and declined to lift the stay."  (ECF No. 91 at 2 (emphasis added).)  These orders show that Credit Acceptance advanced good faith arguments on close questions.

## 2.    Credit Acceptance Did Not Abuse The CBM Process, Nor Is The CBM Process Properly Before This Court

Under Defendants' logic, any strategic course of action taken by Credit Acceptance in the CBM proceedings is an "abuse."  (Fee Mot. at 17.)  Defendants take issue when Credit Acceptance challenges decisions by the PTAB (Fee Mot. 16:28 ("Instead of ceding to the fundamental change in law…")), while also taking issue even when Credit Acceptance does not (*id.* at 17:11-12 ("Patent Owner did not request rehearing on the institution decision")).  In reality, Credit Acceptance challenged the application of new or unsettled law, as it was entitled to do.

For example, Credit Acceptance challenged Defendants' standing based on estoppel in the CBM proceedings.  While Defendants assert there was no merit to Credit Acceptance's challenge, estoppel was an issue that had not been addressed in the unique circumstances that were present here.  Moreover, the challenge resulted in a clarification of otherwise unsettled law that was widely covered by news outlets. (*See, e.g.*, Pak Decl. Exs. 9, 10, 11.)

In any event, alleged misconduct before the Patent Office is governed by 37 C.F.R. § 42.12(a)(2), which empowers "the Board" to issue sanctions where a party advances "a misleading or frivolous argument or request for relief."  Tellingly, Defendants never obtained authorization from the PTAB to move for sanctions. Instead, they chose to make such arguments for the first time in this Court, which is less familiar with the record of those proceedings and less versed in the rules that

17

1   govern them.  Thus, any purported misconduct is not properly before this Court.

2       In sum, Credit Acceptance's conduct of this litigation and the CBM

3   proceedings was at all times reasonable.  Credit Acceptance "did nothing to impede

4   the progress of the case, nor can it be said that [Credit Acceptance] misused the court

5   system…."  *NXP*, 58 F. Supp. at 1325.  This case is not exceptional.

6   **III.   Even If This Case Were Exceptional, The Requested Fees Are Unjustified**

7       "If the district court finds that the case is exceptional, it must then determine

8   whether an award of attorney fees is justified."  *MarcTec, LLC v. Johnson &*

9   *Johnson*, 664 F.3d 907, 916 (Fed. Cir. 2012).  An award of fees is at "the discretion

10  of the trial judge, and [e]ven an exceptional case does not require in all

11  circumstances the award of attorney fees."  *Modine Mfg. Co. v. Allen Grp., Inc.*, 917

12  F.2d 538, 543 (Fed. Cir. 1990) (quotation marks and citation omitted).  Moreover,

13  the movant has the burden to show entitlement to the award and documentation.  *See*

14  *Hensley v. Eckerhart*, 464 U.S. 421, 437 (1983).   "The applicant should exercise

15  'billing judgment' with respect to hours worked, and … records in a manner that will

16  enable a reviewing court to identify distinct claims."  *Id.*

17      This case is not exceptional for the reasons above, but even if it were,

18  Defendants have not justified their entitlement to fees and have failed to exercise

19  billing judgment.  Defendants seek fees for hours expended while this case was

20  stayed, fees for apparently double-counted hours, and fees for work counsel did *for*

21  *other clients*.  Worse yet, the supporting invoices do not add up to the amount sought

22  in the Fee Motion, making it impractical to determine whether the double-billed and

23  erroneous entries have significantly affected the total sought.

24      Fees For Work During the Stay.   When Defendants moved to stay this

25  litigation, they argued to the Court that the stay would "eliminate the potential waste

26  of resources related to discovery and claim construction."  (ECF No. 58 at 3:1-2.)

27  Despite this representation, Defendants' counsel **billed tens of thousands of dollars**

28  **to document review and claim construction** during 2014, while the case was stayed.

18

1  (ECF No. 112-3 at 112-14 ($12,690.04); *id.* at 124-27 ($25,938.02); *id.* at 132-35

2  ($24,925.02); *id.* at 140-43 ($25,085.72); *id.* at 150-53 ($15,935.55); *id.* at 159-62

3  ($35,449.29).)  Notably, the file number listed on these invoices is "W080-7000"—

4  Defendants' file number for this district court litigation, *not* the CBM matters.  (van

5  Loben Sels Decl. ¶ 8 (defining "District Court Litigation" as "W080-7000").)

6       The invoices are replete with references to document review and claim

7  construction.  (*E.g.*, ECF No. 112-3 at 112 ("Conducted review of CAC's produced

8  documents" dated February 3, 2014); *id.* at 125 ("Review case law on claim

9  construction; research Markman briefing strategy" dated January 9, 2014).)  In other

10  words, Defendants' counsel continued racking up fees and issuing invoices for the

11  district court litigation throughout the stay, including for the very discovery and

12  claim construction work they represented would be avoided.  Defendants' conduct

13  should not be rewarded by compensating them for time expended unnecessarily.

14       <u>Double-Counting.</u>  Some of Defendants' invoices cover overlapping periods of

15  time and appear to have been double-counted.  For instance, invoice 10258 (ECF No.

16  112-3 at 131-135) covers entries accrued between March 3 and March 31, 2014.  But

17  invoice 10282 (ECF No. 112-3 at 139-144) covers the same period and includes

18  substantially identical entries.  The cover letter on the second invoice further states

19  that it is replacing the first.  (ECF No. 112-3 at 139 ("We are taking this opportunity

20  to forward Invoice #10282 (Replacing INV#10258) ….").)  The same is true with

21  respect to invoice 10259 (ECF No. 112-3 at 136-138) and invoice 10283 (ECF No.

22  112-3 at 145-149).  Yet there is no indication that Defendants' calculation of their

23  fees accounts for the duplicate entries in the submitted invoices.

24       Similarly, Defendants include two copies of invoice 1406081 for $20,894.88.

25  (ECF No. 112-3 at 197-204.)  The total for this invoice appears to have been counted

26  twice in the total fees requested.  Defendants have failed to "show their work" for the

27  fees they request, and it should not be left to the Court to resolve duplicate billing

28  entries in order to ensure that the fees requested are adequately supported.

19

1  <u>Time Spent On Work On Other Cases.</u>  Defendants' invoices include:
2  "Westlake Flooring dispute with Carwerks"; "draft email to Car Werks counsel";
3  "confer with E. Wang regarding Car Werks payment issue"; and "Respond to email
4  regarding additional contacts at CAC for Car Werks."  (ECF No. 112-5 at 22.)
5  These entries are clearly misbilled because neither Car Werks nor Westlake Flooring
6  are parties.  Moreover, the page that includes these errant entries includes substantial
7  redactions for privilege, which means at least two things: that exact page was
8  carefully reviewed by counsel without correcting the erroneous entries, and Credit
9  Acceptance will not be privy to any other erroneous entries that are hiding under the
10  redactions.  Such errant entries are not excusable; Defendants' counsel has declared
11  under penalty of perjury that "[a]s the lead attorney in this matter" he "reviewed all
12  the time entries by attorneys and litigation staff from both firms, including the rates
13  and amount of time billed for their work."  (van Loben Sels Decl. ¶ 16.)

14  <u>Unclear Math.</u>  Credit Acceptance's counsel has attempted to reconcile the
15  amounts listed on the submitted invoices with the amounts claimed by Defendants to
16  no avail.  (Pak Decl. ¶ 15.)  No combination of the fees and disbursements in the
17  invoices appear to match the totals requested.  (*Id.*)  At a minimum, Defendants
18  should be required to "show their work" before obtaining over $2 million in fees,
19  particularly given the suspicious double-counting and errant entries explained above.

20  Credit Acceptance respectfully submits that even a modicum of billing
21  judgment would have resolved these unnecessary entries, duplications, errors, and
22  confusing documentation.  The Court should deny the Fee Motion even if this case is
23  deemed exceptional, or at the very least significantly reduce any award as a sanction.

24  DATED:  October 5, 2015

25  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

26  By: _____ */s/ Kevin J. Minnick* _____
    Kevin J. Minnick
27  Attorneys for Plaintiff
    CREDIT ACCEPTANCE CORPORATION
28

20

767377-LACSR02A - MSW