| | | |
|---|---|---|
| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES- GENERAL<br><u>UNDER SEAL</u> | Priority _____<br>Send _____<br>Enter _____<br>Closed _____<br>JS-5/JS-6 _____<br>Scan Only _____ |

**CASE NO.:** <u>CV 13-01523 SJO (MRWx)</u>   **DATE:** <u>November 2, 2015</u>

**TITLE:** <u>Credit Acceptance Corporation v. Westlake Services, LLC d\b\a Westlake Financial Services, et al.</u>

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                             Not Present
Courtroom Clerk                                          Court Reporter

**COUNSEL PRESENT FOR PETITIONER:**      **COUNSEL PRESENT FOR RESPONDENT:**

Not Present                                                   Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING DEFENDANTS' MOTION FOR RECOVERY OF ATTORNEYS' FEES, COSTS, AND EXPENSES** [Docket No. 112]

This matter comes before the Court on Defendants Westlake Services, LLC d\b\a Westlake Financial Services ("Westlake"), Nowcom Corporation ("Nowcom"), Hankey Group, and Don R. Hankey's (collectively, "Defendants") Motion for Recovery of Attorneys' Fees, Costs, and Expenses pursuant to 35 U.S.C. section 285 ("Motion"), filed September 8, 2015. Plaintiff Credit Acceptance Corporation ("Plaintiff") filed an opposition to the Motion ("Opposition") on October 5, 2015.[1] The Court found this matter suitable for disposition without oral argument and vacated the hearing set for October 26, 2015. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **DENIES** Defendants' Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

On March 4, 2013, Plaintiff filed a Complaint ("Complaint") against Defendants (the "Litigation") alleging infringement of U.S. Patent No. 6,950,807 (the "'807 Patent"). (Compl. ¶¶ 25-31, ECF No. 1.) Plaintiff alleges it is the assignee of the '807 Patent, entitled "System and Method for Providing Financing," and further alleges that Defendants together offer several infringing products, including online lending platforms and an auto installment loan pooling and portfolio service. (*Id.* ¶¶ 16-23.) The Complaint identifies Westlake and Nowcom as "sister companies within the Hankey Group," and alleges that Don R. Hankey ("Mr. Hankey") is the "moving force behind the design,

---

    [1] Defendants' Motion totaled 25 pages, and therefore exceeded the Court's 20-page requirement stated in its Initial Standing Order. On September 25, 2015, Defendants filed an *ex parte* application seeking leave to file their oversized Motion. (Ex Parte Appl. to Exceed Page Limitations, ECF No. 116.) On September 29, 2015, the Court granted in part Defendants' application, but ruled that, as a consequence, Defendants would not be permitted to file a reply brief. (Order Granting in Part Def.'s Ex Parte Appl. to Exceed Page Limitations, ECF No. 118.)

JS-6

Case 2:13-cv-01523-SJO-MRW Document 121 Filed 11/02/15 Page 2 of 14 Page ID #:2924

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES- GENERAL
<u>UNDER SEAL</u>

CASE NO.: <u>CV 13-01523 SJO (MRWx)</u>   DATE: <u>November 2, 2015</u>

development, manufacture, and/or use of the accused products by Defendants Hankey Group, Westlake, and Nowcom." (*Id.* ¶¶ 9, 10.)

Defendants filed an Answer and Counterclaim ("Answer") on May 6, 2013, and filed a First Amended Answer and Counterclaim ("First Amended Answer") on June 11, 2013, asserting counterclaims of non-infringement, invalidity, and unenforceability in both Answers. (Answer ¶¶ 51-65, ECF No. 28; First Am. Answer ¶¶ 51-65, ECF No. 49.) Defendants requested attorneys' fees pursuant to 35 U.S.C. section 285 in each Counterclaim. (Answer 9; First Am. Answer 8.)

On May 22, 2013,[2] Defendants moved for Rule 11 sanctions against Plaintiff ("Motion for Sanctions"), asserting Plaintiff lacked a reasonable basis to include either Don Hankey or the Hankey Group as defendants in the Complaint. (Defs.' Mot. for Sanctions Under Rule 11, ECF No. 35.) A Scheduling Conference was held on May 28, 2013, during which time the Court addressed the Motion for Sanctions. (Transcript for Proceedings Held on May 28, 2013 ("Tr."), ECF No. 41.) At the Scheduling Conference, the Court noted that Don Hankey "has a website [and] identifies himself as chairman of the Hankey Group," and advised counsel for Defendants that because "Rule 11 allows a party to be included . . . if there is evidentiary support or likely to have evidentiary support after reasonable opportunity for further investigation," the Motion for Sanctions appeared to be "premature." (Tr. 7:15-24, 8:20-24, 10:19-23.) In light of this exchange, Defendants withdrew the Motion for Sanctions on June 11, 2013. (Notice of Withdrawal of Mot. for Sanctions, ECF No. 48.)

On October 11, 2013,[3] Westlake filed a first Covered Business Method petition ("CBM-1") with the Patent Trials and Appeals Board ("PTAB") seeking post-grant review of the '807 Patent. (*See* Mot. to Stay Case Pending CBM Petition Review ("Stay Motion") 1, ECF No. 58.) In CBM-1, Westlake argued to the PTAB that several claims of the '807 Patent are either unpatentable or invalid under 35 U.S.C. sections 101, 112 ¶ 1, and 112 ¶ 2. (Stay Mot.; *see generally* Decl. John D. van Lobel Sels in Supp. Mot. ("JvLS Declaration"), ECF No. 112, Ex. A.) On November 15, 2013, Defendants unilaterally moved to stay the Litigation in light of CBM-1. (*See* Stay Mot.) On December 30, 2013, the Court granted the Stay Motion over Plaintiff's opposition, reasoning that although the law on patentability under 35 U.S.C. section 101 ("Section 101" or "§ 101") was in flux, "the possibility of guidance lies on the horizon. The Supreme Court granted certiorari to review the Federal Circuit's decision in [*Alice Corp. v. CLS Bank*] . . . . Knowing the proper test to apply will simplify the required legal analysis of this issue." (Order Granting Stay Mot. 5, ECF No. 67.)

---

[2] Defendants filed a motion for sanctions on May 15, 2013 (ECF No. 31), but this motion was stricken for failure to comply with the Central District of California Local Rules (ECF No. 33).

[3] Westlake filed a corrected version of CBM-1 Petition on October 25, 2013. (Stay Mot. 4.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES- GENERAL
<u>UNDER SEAL</u>

CASE NO.:   <u>CV 13-01523 SJO (MRWx)</u>          DATE:  <u>November 2, 2015</u>

Ultimately, the PTAB declined to institute review of claims 10-12 and 14-33 of the '807 Patent in CBM-1. (Stay Mot. 3.) On May 12, 2014, Plaintiff filed a Motion to Lift Stay in the Litigation ("First Motion to Lift Stay"), arguing the Litigation should proceed with respect to claims 10-12 and 14-33, which were not under review in CBM-1. (First Mot. to Lift Stay, ECF No. 70.) The Court declined the First Motion to Lift Stay without prejudice on June 16, 2014, noting that it would "reconsider the issue after the Supreme Court releases a decision in *Alice Corp*," and expressly conditioning its denial on Westlake's filing a request for reconsideration to the PTAB within seven days of the release of the *Alice* decision. (Order Denying Without Prejudice Pl.'s Mot. to Lift Stay, ECF No. 80.)

The PTAB ultimately denied Westlake's request for reconsideration, and on June 30, 2014 Plaintiff asked the Court to reconsider its denial of the Motion to Lift Stay in light of this PTAB's denial ("Motion for Reconsideration"). (Mot. for Recons., ECF No. 82.) The Court denied the Motion for Reconsideration on July 21, 2014, finding that "[r]ather than risk splitting the dispute into parallel paths, the Court deems it best to maintain the stay until the PTAB has ruled on Westlake's forthcoming petition," which Westlake represented to the Court would be filed by no later than July 25, 2014. (Order Den. Mot. for Recons. 5, ECF No. 88.) Defendants did ultimately file a second CBM petition ("CBM-2") with the PTAB on August 15, 2014 seeking review of the remaining claims of the '807 Patent, but only after the Court issued an order to show cause in response to Defendants' failure to file a second petition by their self-imposed deadline. (Order to Show Cause re Delay in Filing Covered Business Methods Pet., ECF No. 91.)

On April 1, 2015, Defendants informed the Court that the PTAB had issued a Final Written Decision for CBM-1 ("Final Written Decision") in which the PTAB concluded that claims 1-9, 13, and 34-42 of the '807 Patent "have been shown by a preponderance of the evidence to be unpatentable under 35 U.S.C. § 101." (Notice of Update to Status, Ex. A, ECF No. 98.) There is no dispute that Plaintiff did not seek rehearing of the Final Written Decision, nor did it appeal the Final Written Decision to the Federal Circuit.[4]

On June 23, 2015, Plaintiff filed a Motion to Voluntarily Dismiss with Prejudice the Complaint, which included a proffered covenant not to sue. (Pl.'s Mot. Voluntarily Dismiss, ECF No. 99, Ex. 1.) Plaintiff avers through a declaration that it attempted to engage in settlement discussions with Defendants, but to no avail. (Decl. James Y. Pak in Supp. Opp'n ("Pak Declaration"), Ex. 1, at 3, ECF No. 119.) Defendants opposed dismissal and filed an *ex parte* application to enforce the stay ("*Ex Parte* Stay Application") as well as a motion for leave to amend the Answer to include additional counterclaims ("Motion to Add Counterclaims"). (*Ex Parte* Stay Appl., ECF No. 100; Mot. to Add Counterclaims, ECF No. 104.)  The Court denied the *Ex Parte* Stay Application,

---

[4]   Defendants aver in their Motion that a final hearing date on CBM-2 was set for September 10, 2015.  (Mot. 4.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES- GENERAL**
<u>**UNDER SEAL**</u>

CASE NO.: <u>**CV 13-01523 SJO (MRWx)**</u>　　　DATE: <u>**November 2, 2015**</u>

denied the Motion to Add Counterclaims, and granted Plaintiff's Motion to Voluntarily Dismiss on August 24, 2015. (Order Granting Pl.'s Mot. Voluntarily Dismiss, ECF No. 109.)

On September 8, 2015, Defendants filed the instant Motion.[5] (Mot., ECF No. 112.)

II. <u>LEGAL STANDARDS</u>

　　A. <u>"Exceptional" Cases Under 35 U.S.C. Section 285</u>

Under 35 U.S.C. section 285 ("Section 285"), the court, in "exceptional circumstances," may award reasonable attorneys' fees to the prevailing party. 35 U.S.C. § 285. Recently, the United States Supreme Court clarified that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, — U.S. —, 134 S. Ct. 1749, 1756 (2014). Accordingly, the Supreme Court held that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 1758.

In so ruling, the Supreme Court expressly overturned the Federal Circuit's "overly rigid" standard articulated in *Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005). *See Octane*, 134 S. Ct. at 1756-57 (overruling *Brooks Furniture* and finding that its standard "superimposes an inflexible framework onto statutory text that is inherently flexible"). In *Brooks Furniture*, the Federal Circuit created "a standard under which a case is 'exceptional' only if a district court either finds litigation-related misconduct of an independently sanctionable magnitude or determines that the litigation was both 'brought in subjective bad faith' and 'objectively baseless.'" 393 F.3d at 1381.

Although courts in the wake of *Octane* have had more latitude to award prevailing parties attorneys' fees pursuant to Section 285, it is nevertheless clear that "fee awards are not to be used 'as a penalty for failure to win a patent infringement suit.'" *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (rejecting the "fact that Gaymar lost at the PTO" as a basis for awarding attorneys' fees pursuant to Section 285) (quoting *Octane Fitness*, 134 S. Ct. at 1753). "In other words, fees are not awarded solely because one party's position did

---

[5] Plaintiff directs the Court's attention to the fact that the Motion was filed at 8:20 p.m. on September 8, 2015, and that pursuant to the Court's Initial Standing Order rule 3(a), it is deemed to be filed the next day; i.e. in Plaintiff's view, one day late. (Opp'n 4 n. 1; Initial Standing Order 3(a), ECF No. 7.) Nevertheless, the Motion was filed well in advance of the twenty-eight day deadline imposed by Local rule 6-1, and is therefore not late-filed. (L.R. 6-1.)

Case 2:13-cv-01523-SJO-MRW Document 121 Filed 11/02/15 Page 5 of 14 Page ID #:2927

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CIVIL MINUTES- GENERAL
<u>UNDER SEAL</u>

| | |
|---|---|
| CASE NO.: <u>CV 13-01523 SJO (MRWx)</u> | DATE: <u>November 2, 2015</u> |

not prevail." *Id.* Such a rule would run afoul of the Supreme Court's mandate that Section 285 requires a case to "stand[] out from others" and "would have negative implications for access to justice." *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1114-15 (C.D. Cal. 2015).

      B.      <u>Calculation of Reasonable Attorneys' Fees</u>

A district court has discretion to decide the amount of attorneys' fees available under Section 285. *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983) (citations omitted). "The methodology of assessing a reasonable award under 35 U.S.C. § 285 is within the discretion of the district court." *Mathis v. Spears*, 857 F.2d 749, 754 (Fec. Cir. 1988) (citing *Lam*, 718 F.2d at 1068). "In determining the reasonableness of the award, there must be some evidence to support the reasonableness of, *inter alia*, the billing rate charged and the number of hours expended." *Lam*, 782 F.2d at 1068 (citations omitted).

The calculation of appropriate fees is not a trivial undertaking, and "[a]uthorities vary on how to establish attorney fees in the different areas where fees are recoverable." *Universal Elecs. Co. v. Universal Remote Control, Inc.*, — F. Supp. 3d —, No. CV 12-00329 AG, 2015 WL 5470164, at *1 (C.D. Cal. Sept. 4, 2015). Courts typically use the "lodestar" approach articulated in *Hensley v. Eckerhart* as a "useful starting point for determining the amount of a reasonable fee." 461 U.S. 424, 433 (1983). The "lodestar" amount is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* An hourly rate is typically reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Determining the number of hours reasonably expended on the litigation often requires more finessing. The Federal Circuit has held that

> although our case law explains the application of 35 U.S.C. § 285 as involving a two-step analysis of first determining whether the case is exceptional and then determining the amount of the award . . . the two component steps of the analysis are not independent. Rather, the amount of the attorney fees depends on the extent to which the case is exceptional. In other words, the exceptionality determination highly influences the award setting.

*Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001) (internal citations omitted). As a result, "the amount of fees awarded to the 'prevailing party' should bear some relation to the extent to which the party actually prevailed." *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1554 (Fed. Cir. 1989).

| | |
|---|---|
| JS-6 | Priority ___<br>Send ___<br>Enter ___<br>Closed ___<br>JS-5/JS-6 ___<br>Scan Only ___ |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES- GENERAL**
<u>**UNDER SEAL**</u>

**CASE NO.:** <u>CV 13-01523 SJO (MRWx)</u>        **DATE:** <u>November 2, 2015</u>

Beyond attorneys' fees, "[t]he award of expenses [is also] properly within the scope of § 285." *Cent. Soya Co. v. Geo A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983). District courts continually recognize that non-expert, non-taxable costs are compensable under Section 285. *See, e.g.*, *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 2d 1154, 1174-75 (N.D. Cal. 2015) (awarding non-taxable travel and lodging expenses and document delivery fees, but not expert fees). Expert fees, however, are only reimbursable if there is evidence of "fraud on the court or abuse of judicial process." *Amsted Indus. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994).

Pursuant to Federal Rule of Civil Procedure 54(d)(2)(C), a "court may decide issues of liability for fees before receiving submissions on the value of services." Fed. R. Civ. P. 54(d)(2)(C). Indeed, "[t]he court is explicitly authorized to make a determination of the liability for fees before receiving submissions by the parties bearing on the amount of an award. This option may be appropriate in actions in which the liability issue is doubtful and the evaluation issues are numerous and complex." Fed. R. Civ. P. 54 advisory committee's note.

III. <u>DISCUSSION</u>

    A.     <u>Whether the Case Is "Exceptional"</u>

Defendants articulate three reasons why the case should be deemed "exceptional" within the meaning of Section 285. First, Defendants argue that Plaintiff failed to conduct a reasonable pre-suit investigation, as evidenced by Plaintiff's decision to name Don Hankey in his individual capacity as a defendant in the lawsuit and Plaintiff's decision to advance unsupportable infringement positions in light of the lack of evidence that the accused products met two different claim limitations. (Mot. 6-11.) Second, Defendants argue that Plaintiff used unreasonable litigation tactics by continuing to litigate the case even after the Supreme Court issued its opinion regarding the scope of 35 U.S.C. section 101 in *Alice Corp. Pty. Ltd. v. CLS Bank International*, requiring Defendants to file a second Covered Business Methods petition in the PTAB. (Mot. 11-14.) Third, Defendants argue that Plaintiff's motions to lift the court-imposed stay and various motions made before the PTAB were both frivolous and unnecessary. (Mot. 14-19.)

Plaintiff responds that none of these arguments render this "run-of-the-mill" case "exceptional," and that Defendants have pointed to no authority compelling such a conclusion. (Opp'n 5-6.) As is discussed below, the Court agrees with Plaintiff and finds that Defendants have not met their burden of proving that this case is "exceptional" within the meaning of Section 285.

        1.     <u>Plaintiff's Pre-Suit Investigation</u>

Defendants' first argument that the case is "exceptional" centers on Plaintiff's allegedly deficient pre-suit investigation. In particular, Defendants argue that a reasonable pre-suit investigation

| | | |
|---|---|---|
| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES- GENERAL<br><u>UNDER SEAL</u> | Priority _____<br>Send _____<br>Enter _____<br>Closed _____<br>JS-5/JS-6 _____<br>Scan Only _____ |

**CASE NO.:** <u>CV 13-01523 SJO (MRWx)</u>      **DATE:** <u>November 2, 2015</u>

would have revealed that Don Hankey was not a proper defendant, and would have clearly demonstrated that the accused products did not infringe the '807 Patent. (Mot. 5-10.)

      a.     <u>Plaintiff's Pre-Suit Investigation of Don Hankey</u>

Defendants begin by arguing that Plaintiff improperly "named Don Hankey personally as one of the defendants without any evidence that Don Hankey himself performed any acts of infringement." (Mot. 6.) This is the same argument raised by Defendants in their Motion for Sanctions, which the Court found to be "premature" in light of the lack of discovery which had taken place at the time the Motion for Sanctions was filed. (Tr. 7:15-24, 8:20-24, 10:19-23.) Indeed, at a Status Conference held just after the Motion for Sanction was filed, the Court noted that Don Hankey "has a website [and] identifies himself as chairman of the Hankey Group," and advised counsel for Defendants that because "Rule 11 allows a party to be included . . . if there is evidentiary support or likely to have evidentiary support after reasonable opportunity for further investigation," the Motion for Sanctions appeared to be "premature." (Tr. 7:15-24, 8:20-24, 10:19-23.)

Defendants now allege that certain discovery was turned over by Mr. Hankey tending to show he was not a proper defendant, and argue that Plaintiff's alleged failure to "diligently pursue an investigation" of these facts reveals that Plaintiffs lacked a "good faith basis for the false allegation" that Mr. Hankey played a role in the day-to-day operation of defendants Westlake or Nowcom Corporation. (Mot. 8-9.) Defendants argue that "[a]lthough the case was dismissed before Defendants could re-file th[eir] Motion for Sanctions," Plaintiff "never took steps to dismiss Mr. Hankey as a defendant in this case." (*Id.*)

As a preliminary matter, Defendants cite to no case law in support of their argument that a plaintiff's misjoinder of a defendant can serve as a basis for finding a case "exceptional" within the meaning of Section 285, and the Court has been unable to locate any case standing for such a proposition. Perhaps more critically, though, Defendants argument rests on two unsupported premises: first, that Plaintiff in fact lacked a good faith basis to believe Mr. Hankey might be a proper defendant; and second, that Plaintiff's failure to voluntarily dismiss Mr. Hankey after obtaining documents purporting to show that defendant was not properly joined is sanctionable under Rule 11 of the Federal Rules of Civil Procedure, particularly where discovery had not closed before the case was stayed.

With respect to the first premise, as Plaintiff persuasively argues in its Opposition, its pre-suit investigation was reasonable in light of evidence that Mr. Hankey was intimately connected with the other named defendants and even took credit for implementing these defendants' technology

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CIVIL MINUTES- GENERAL
UNDER SEAL

CASE NO.: **CV 13-01523 SJO (MRWx)**           DATE: **November 2, 2015**

policies.[6] It was therefore reasonable for Plaintiff to believe that Mr. Hankey, who himself purports to be intimately involved in the activities of other named defendants as evidenced by those companies' websites, performed some of the steps of the '807 Patent's method claims under a theory of joint or vicarious liability. *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013). Such an assumption would have been even more reasonable in 2012—when Plaintiff presumably conducted its pre-suit investigation—given the Federal Circuit's then binding holding in *Akamai v. Limelight* that a defendant can be liable for inducing other entities to each perform certain elements of a claim even if neither party performed all of the elements of the claim. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1306 (Fed. Cir. 2015) (*en banc*) ("To be clear, we hold that all the steps of a claimed method must be performed in order to find induced infringement, but that it is not necessary to prove that all the steps were committed by a single entity."), *overruled by Limelight Networks, Inc. V. Akamai Techs., Inc.*, — U.S. —, 134 S. Ct. 2111, 2117-18 (2014). The cases cited by Defendants are pre-*Akamai* and therefore would not have been binding at the time Plaintiff would have conducted its pre-suit investigation.

The second premise underlying Defendants' argument is similarly flawed. Even if the seventy pages of documents produced by Mr. Hankey conclusively show his lack of involvement, Defendants' argument neglects to account for Westlake's decision to file the CBM-1 petition and seek a stay of the Litigation before the close of discovery. Indeed, the Litigation was stayed on December 30, 2013, well before the close of fact discovery on April 21, 2014. (*Compare* Order Granting Stay Mot. *with* Minutes of Scheduling Conference, ECF No. 46.) The argument that Plaintiff failed to diligently pursue discovery of Mr. Hankey does not persuade in light of Defendants' unilateral decision to litigate in a separate forum and seek a stay of the Litigation.

Accordingly, Defendants have failed to demonstrate why Plaintiff's pre-suit investigation of or discovery practices related to Mr. Hankey weigh in favor of a finding that this case is "exceptional."

        b.      <u>Plaintiff's Pre-Suit Investigation of the Accused Products</u>

Defendants' second pre-suit investigation argument is that Plaintiff's "infringement claims were objectively baseless where no reasonable litigant could reasonably expect success on the merits." (Mot. 9.) In particular, Defendants argue that screen shots submitted in support of Plaintiff's own

---

[6] (*See, e.g.*, Declaration of James Y. Pak in Supp. Opp'n ("Pak Declaration"), ECF No. 119, Ex. 1 ("With the advent of the Internet, Mr. Hankey has swiftly incorporated technology into every aspect of the Hankey Group of companies"); Ex. 6 ("Hankey Group . . . is comprised of seven operating companies with 2,100 employees. Don Hankey founded six of the companies and purchased the seventh in 1988."); Ex. 7 at 3; Ex. 8 at 23.)

| | | |
|---|---|---|
| JS-6 | **UNITED STATES DISTRICT COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA**<br><br>**CIVIL MINUTES- GENERAL**<br><u>**UNDER SEAL**</u> | Priority ____<br>Send ____<br>Enter ____<br>Closed ____<br>JS-5/JS-6 ____<br>Scan Only ____ |

**CASE NO.:** <u>CV 13-01523 SJO (MRWx)</u>  **DATE:** <u>November 2, 2015</u>

claim construction chart and infringement contentions reveal that the accused products do not practice the "dealer cost" or "pooling of collateral" elements of the asserted claims, even under Plaintiff's preferred construction of these terms. (Mot. 9-11.)

Plaintiff responds as follows. First, a declaration submitted by Robert Lekstrom ("Lekstrom Declaration") in support of the Motion containing descriptions of the accused products is testimonial in nature, and given Plaintiff has not had an opportunity to cross-examine Mr. Lekstrom, such evidence cannot be considered in the instant Motion. (Opp'n 14.) Moreover, as discovery had not concluded by the time the Litigation was stayed, Plaintiff never had an opportunity to fully review Defendants' internal systems documentation. (*Id.*) Nevertheless, Plaintiff maintains that its infringement positions are far from baseless, as evidenced by photos attached to the Lekstrom Declaration showing the accused products refer to "Cost," "Vehicle Cost," and "Vehicle Costs"—which Plaintiff argues reasonably shows that the accused products consider a "dealer cost"—and utilize "portfolio pools" that advertise pools of "$50,000 and up" and $250,000 and up"—which Plaintiff argues reasonably shows the accused products utilize "collateral pools." (*Id.* at 14-15; Lekstrom Decl., Ex. F at 19, 21, 28, 52, 54.) Given no Markman hearing has been held, no Markman order has issued, and no findings of fact have been made as to whether the accused products infringe, Defendants' attempt to rely on newly drafted testimony in their favor is nor proper at this late stage.

Plaintiff presents a more persuasive argument. Defendants have not demonstrated why Plaintiff's infringement positions are "objectively baseless" in light of: (1) the fact that discovery had not been completed by the time the Litigation was stayed; (2) the lack of any claim construction or findings of fact regarding infringement in the Litigation; and (3) the images of the accused products submitted by Defendants which reasonably show the products practice the "dealer cost" and "pooling of collateral" limitations. Accordingly, the Court does not find that Plaintiff's claim construction positions support a finding of "exceptionality."

        2.      <u>The Impact of *Alice*</u>

Defendants' second argument in support of their contention that this case is "exceptional" is that Plaintiff's "failure to recognize the dramatic sea change heralded by *Alice* and the Federal Circuit and PTAB cases which followed [illustrates] its unreasonable litigation tactics," particularly given "several Federal Circuit decisions and PTAB decisions post-*Alice* have found claims similar to the '807 unpatentable subject matter." (Mot. 11.) In particular, Defendants claim that "[t]his failure to abandon the case following the fundamental change in law resulted in Defendants incurring unreasonable and unnecessary litigation costs and expenses in the amount of $1,165,147.73." (Mot. 12.)

Defendants' argument is unavailing. Although it is true that the Court "repeatedly emphasized the importance of *Alice* to any potential resolution," these statements were made in the context of

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

**CIVIL MINUTES- GENERAL**
<u>**UNDER SEAL**</u>

CASE NO.: <u>CV 13-01523 SJO (MRWx)</u>          DATE: <u>November 2, 2015</u>

deciding whether to stay (or lift a stay of) the Litigation pending the PTAB's resolution of CBM-1, and merely hypothesized that the Supreme Court's then-forthcoming decision in *Alice* might help clarify the Section 101 landscape in the wake of a highly fractured Federal Circuit *en banc* opinion in *CLS Bank International v. Alice Corporation PTY. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013).[7] These statements fall short of implying that Plaintiff should have voluntarily dismissed the Litigation or the two CBM petitions immediately after the Supreme Court issued its opinion in *Alice*, much less that Plaintiff's failure to do so would amount to an "unreasonable litigation tactic[]." (Mot. 11-12.)

Moreover, it has become clear over time that "[g]iven the opacity of *Alice*, it is unsurprising that courts have struggled to define the boundaries of software patentability." *Cal. Inst. Tech. v. Hughes Commcn's Inc.*, 59 F. Supp. 3d 974, 990 (C.D. Cal. 2014). Although Defendants attempt to characterize the '807 Patent as facially unpatentable by viewing later-issued decisions by the PTAB in CBM-1 in an *ex ante* light, it is far from clear that each of the claims of the '807 Patent fails to recite patent-eligible subject matter, either before or after *Alice*, *Ultramercial*, and other decisions cited by Defendants.[8] Defendants' claim that Plaintiff's "failure to abandon the case" in light of these decisions renders the Litigation and PTAB proceedings "unreasonable" does not convince the Court.

As a corollary to the above, Defendants' argument does not take into account the tenet that issued patents are presumed valid. *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085,

---

[7] (*See, e.g.*, Stay Order 5 ("However, the possibility of guidance lies on the horizon . . . Knowing the proper test to apply will simplify the required legal analysis of this [Section 101] issue."); Order Denying Stay Motion 1 ("Nonetheless, the Court finds it prudent to wait until the Supreme Court releases its decision in *Alice Corp.* before making a final decision on Plaintiff's Motion."); Order Denying Motion for Reconsideration 5 ("The Court will not attempt to predict the PTAB's response to Westlake's newest CBM petition, but given the new Supreme Court guidance in issuing *Alice Corp.* and vacating *Ultramercial*, the PTAB may reconsider its earlier reasoning concerning claims 10-12 and 14-33 of the '807 Patent. Generally, the Court would discourage a defendant from filing serial CBM petitions. However, there are unique circumstances here: the Court has repeatedly emphasized the importance of *Alice Corp.* to any potential resolution. Rather than risk splitting the dispute into parallel paths, the Court deems it best to maintain to stay until the PTAB has ruled on Westlake's forthcoming petition.").)

[8] The Court notes that all of the decisions cited by Defendants issued more than a year after *Alice*, indicating the actual impact of *Alice* in the immediate wake of its issuance was far from certain. *See, e.g.*, *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015); *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306 (Fed. Cir. 2015); *Bank of Am., N.A. v. Intellectual Ventures I LLC*, No. CBM2014-00028, 2015 WL 2408093 (Patent Tr. & App. Bd. May 18, 2015).

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

CIVIL MINUTES- GENERAL
UNDER SEAL

CASE NO.: CV 13-01523 SJO (MRWx)    DATE: November 2, 2015

1088 (Fed. Cir. 1998) ("[A] patent is presumed valid, and this presumption exists at every stage of the litigation."). As the PTAB only concluded that claims 1-9, 13, and 34-42 of the '807 Patent are unpatentable under Section 101 in CBM-1, the remaining claims of the '807 Patent are presumed valid unless and until the PTAB finds them to be invalid—Defendants have introduced no evidence or argument in the Litigation to overcome this presumption.

Defendants' argument that Plaintiff "unreasonably" opposed Westlake's efforts before the PTAB (1) to file a second request for rehearing in CBM-1 and (2) to request that all of the claims that would be the subject of CBM-2 be considered under *Alice* as part of CBM-1 is similarly unavailing. (Mot. 12-14.) This argument again ignores the presumption of validity afforded to issued patents, and overlooks the role of an opposing party in our adversarial system of dispute resolution. *Cf. Vasudevan Software, Inc. v. Microstrategy, Inc.*, No. CV 11-06637 RS, 2015 WL 4940635, at *6 (N.D. Cal. Aug. 19, 2015) (denying an award of attorneys' fees against a patentee even though "[i]t engaged in numerous questionable and overly aggressive litigation tactics," finding that "[o]n balance . . . such behavior may reasonably be interpreted as part of [the patentee's] good-faith effort to advance its position in the face of [the adversary's] vigorous and equally fervent defense"). It also overlooks the PTAB's own process for issuing sanctions where parties advance "a misleading or frivolous argument or request for relief." 37 C.F.R. § 42.12(a)(2). Defendants have provided little support for their suggestion that Plaintiff's refusal to "back down" and not contest Westlake's multiple requests to the PTAB warrants a finding of "exceptionality."

Defendants' arguments, when taken to their logical conclusion, would appear to require that any plaintiff asserting a patent "similar to" patents found unpatentable under Section 101 in a separate case voluntarily dismiss with prejudice their infringement claims—or perhaps even forfeit their patents altogether—or face the risk of an attorneys' fee award pursuant to Section 285. The contours of Section 101 have proven difficult to apply in practice both before and after *Alice*, and the Court declines the opportunity to read Section 285 so broadly as to impose such a harsh and unfeasible fee-shifting rule on patent owners.

       3.      <u>Plaintiff's Allegedly Frivolous Motions in the Litigation and Before the PTAB</u>

Defendants' final argument in support of their position that this case is "exceptional" centers on Plaintiff's purportedly futile attempts to oppose and lift the stay of the Litigation and Plaintiff's alleged "myriad CBM abuses." (Mot. 14-19.) Each of these arguments is addressed in turn.

First, Plaintiff's efforts to obtain a lift of the stay are far from unreasonable, and Defendants' attempt to characterize these efforts as such ignores the timeline of the Litigation and CBM proceedings and the law governing stays of litigation. First, contrary to Defendants' suggestion, district courts are not obligated to stay a litigation when a defendant seeks post-grant review of a patent. Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, § 18, 125 Stat. 284,

Case 2:13-cv-01523-SJO-MRW Document 121 Filed 11/02/15 Page 12 of 14 Page ID #:2934

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | Priority ____<br>Send ____<br>Enter ____<br>Closed ____<br>JS-5/JS-6 ____<br>Scan Only ____ |
|---|---|---|

**CIVIL MINUTES- GENERAL**
<u>UNDER SEAL</u>

**CASE NO.:** <u>CV 13-01523 SJO (MRWx)</u>   **DATE:** <u>November 2, 2015</u>

329-32 (2011). Instead, district courts are directed to consider four factors to assess if a stay is appropriate:

> (1) whether a stay, or the denial thereof, will simplify the issues in question or streamline the trial;
> (2) whether discovery is complete and whether a trial date has been set;
> (3) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (4) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1). The Court reviewed these factors in its Order Granting Stay Motion, and found that although the second factor weighed against staying the case and the third factor "weigh[ed] modestly in favor of a stay," "considering all four factors, the Court f[ound] that a stay [wa]s appropriate in this case." (Order Granting Stay Mot. 6-8.)

With this background in mind, Defendants have failed to demonstrate that Plaintiff brought either the Motion to Lift Stay or Motion for Reconsideration for an improper purpose. Indeed, although the Motion to Lift Stay—which was brought after the PTAB declined to institute review in CBM-1 of certain claims of the '807 Patent—was denied by the Court, it was denied **without prejudice** in an order in which the Court noted it would "**reconsider** the issue [whether to lift the stay] after the Supreme Court releases a decision in *Alice Corp*" and **expressly conditioned** its denial on "Westlake's filing its request for reconsideration to the PTAB within seven days of the release of the *Alice Corp.* decision." (Order Den. Without Prejudice Pl.'s Mot. to Lift Stay 1 (emphasis added).) Moreover, Plaintiff represented to the Court that should it grant the First Motion to Lift Stay, Plaintiff would "promptly seek permission to amend its infringement contentions and limit its claim to only claims not currently under review by the PTAB." (Mot. to Lift Stay 1 n. 1.) Defendants have not demonstrated that any aspect of Plaintiff's facially reasonable request to pursue claims not under review in CBM-1 or the Court's order conditionally and temporarily denying Plaintiff's First Motion to Lift Stay evidenced an improper motive on the part of Plaintiff.

Similarly, after the PTAB denied Defendants' request for reconsideration as to the claims not under review in CBM-1, Plaintiff brought a Motion for Reconsideration in which it asked the Court to reconsider its Order Denying Without Prejudice Plaintiff's Motion to Lift Stay. (Mot. for Recons.) Although the Court denied this motion as well, it did so only after Defendants represented that they would file CBM-2 covering the claims not then under review. (Order Den. Mot. for Recons.) Moreover, the Court stated that "[g]enerally, the Court would discourage a defendant from filing serial CBM petitions. However, there are unique circumstances here" given the Supreme Court's forthcoming opinion in *Alice*. (*Id.* 5.) Defendants then failed to timely file CBM-2, causing the Court to issue an order to show cause, in which the Court stated that in issuing the Order Denying the Motion for Reconsideration, the Court "took the unusual step of agreeing to wait up to 6

Case 2:13-cv-01523-SJO-MRW   Document 121   Filed 11/02/15   Page 13 of 14   Page ID #:2935

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CIVIL MINUTES- GENERAL**
<u>UNDER SEAL</u>

| | |
|---|---|
| **CASE NO.:** <u>CV 13-01523 SJO (MRWx)</u> | **DATE:** <u>November 2, 2015</u> |

months for another CBM petition to be decided and declined to lift the stay." (Order to Show Cause re Delay in Filing Covered Business Methods Pet. 2.) Against this backdrop, Defendants have not shown that Plaintiff's two requests to lift the stay in the Litigation were unreasonable.

Defendants' attempt to characterize Plaintiff's conduct before the PTAB as improper is similarly unavailing. Defendants claim that Plaintiff "displayed signs of overly-aggressive litigation conduct," but fail to show how this conduct renders the case "exceptional" within the meaning of Section 285. The first claimed abuse is Plaintiff's "unsuccessful[] attempt[] to interrupt Westlake's CBM proceedings" by "raising an estoppel argument and s[eeking] to terminate the proceedings" in CBM-2. (Mot. 16-17.) Although it is undisputed that the PTAB twice rejected Plaintiff's attempts to terminate CBM-2 on estoppel grounds, Defendants fail to show why these attempts were baseless or otherwise improperly made, particularly given Plaintiff's averments that "estoppel was an issue that had not been addressed in the unique circumstances that were present here" and that the challenges "resulted in a clarification of otherwise unsettled law [regarding follow-on petitions] that was widely covered by news outlets." (Opp'n 17; Pak Decl., Exs. 9, 10, 11.)

The second claimed abuse stems from Plaintiff's allegedly "frivolous filing" regarding a page limit dispute. (Mot. 17-18.) Defendants' own Motion, however, shows that the PTAB found that Plaintiff did not argue "persuasively that it would be prejudiced." (Mot. 17-18.) The PTAB's conclusion does not indicate that Plaintiff's page-limit motion was frivolous.

Defendants' third claimed abuse centers on Plaintiff's allegedly improper attempt to invoke 35 U.S.C. section 327 to terminate the CBM proceedings weeks before the final hearing. (Mot. 18.) Although the PTAB summarily rejected Plaintiff's attempt, and in doing so used somewhat strong language tending to show Plaintiff's attempt was unsupported by any clear authority, the Court has difficulty finding that Plaintiff's attempt was "frivolous" given the recent enactment of the AIA and Defendants' apparent failure to raise the alleged frivolity with the PTAB. Indeed, Defendants do not claim that they ever obtained—much less moved for—authorization from the PTAB to move for sanctions against Plaintiff due to the conduct described above, as is provided for in 37 C.F.R. section 42.12(a)(2). Instead, Defendants take issue with Plaintiff's "threat[] to file a motion for sanctions due to alleged misconduct" during a deposition of one of Plaintiff's experts, alleging that the PTAB could not articulate the improper basis of the questions and denied Plaintiff's request for authorization to file a motion for sanctions. (Mot. 16.) First, a party's failed attempt to move for sanctions in a separate proceeding does not support a finding of "exceptionality" absent significantly more evidence of improper purpose or baselessness. Moreover, that Defendants were, at best, unable to obtain authorization to move for sanctions against Plaintiff in the CBM proceedings undercuts any argument that Plaintiff committed "myriad CBM abuses" sufficient to render the Litigation "exceptional."

///

| | | |
|---|---|---|
| **JS-6** | **UNITED STATES DISTRICT COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA**<br><br>**CIVIL MINUTES- GENERAL**<br><u>**UNDER SEAL**</u> | Priority ___<br>Send ___<br>Enter ___<br>Closed ___<br>JS-5/JS-6 ___<br>Scan Only ___ |

**CASE NO.:** <u>CV 13-01523 SJO (MRWx)</u>        **DATE:** <u>November 2, 2015</u>

        4.        <u>Conclusion Regarding "Exceptionality"</u>

Having considered each of Defendants' arguments, the Court finds that Defendants have not met their burden of proving that this case is "exceptional" within the meaning of Section 285 considering the totality of the circumstances.

        B.        <u>The Reasonableness of Defendants' Request for Attorneys' Fees</u>

Because the Court does not find this case to be "exceptional" within the meaning of 35 U.S.C. section 285, the Court does not address the reasonableness of Defendants' requested attorneys' fees and expenses award.  *See* Fed. R. Civ. P. 54(d)(2)(C).

III.       <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Recovery of Attorneys' Fees, Costs and Expenses.

IT IS SO ORDERED.